## UNITED STATES v. WHITE.
### Crim. No. 629.

United States District Court
D. Nebraska, North Platte Division.
Feb. 5, 1951.

Joseph T. Votava, U. S. Atty., and John E. Deming, Asst. U. S. Atty., both of Omaha, Neb., for the plaintiff.

David Tant, of Oklahoma City, Okl., for the defendant.

DELEHANT, District Judge.

The defendant moves, under Rule 21(b), Federal Rules of Criminal procedure, 18 U.S.C.A., for the transfer of this case and all further proceedings herein from this court to the United States District Court for the Western District of Oklahoma, at Oklahoma City, Oklahoma.

On October 17, 1950, a duly constituted grand jury for this district found and returned an indictment in four counts against the defendant. In it the defendant is charged with devising a scheme and artifice to defraud purchasers of fractional interests in oil and gas rights in two separately described sections of land located, one in Seminole County, the other in Payne County, in the state of Oklahoma, and to obtain money and property by means of false representations and pretenses and knowingly false promises. Briefly and partially summarized,[1] the allegedly false pretenses, representations and promises concerned the use to which the proceeds of sales of such fractional interests would be put; the volume of production of oil from designated wells on the separate parcels of land, both actually in progress and thereafter to occur; and the construction of a pipe line at a declared cost to certain of the wells. The scheme or artifice was asserted also to include the mortgaging of certain equipment and the assignment of undivided interests in an oil well on one of the parcels of land as security and as an inducement, for a loan of money despite the facts, well known to the defendant, that he did not own the equipment and was under injunctive restraint by an Oklahoma state court, forbidding him to dispose of or transfer the interests in the oil well. In the several counts of the indictment it is charged that the defendant, in furtherance of the scheme or artifice, (I) transported two named men by automobile from Sidney, Nebraska to Seminole and Stillwater, Oklahoma, 15 U.S.C.A. § 77q (a) (1); (II) similarly transported two other named men between the same places; (III) used the facilities of Western Union Telegraph Company for the transmission of a telegraphic money order for a substantial sum of money by a named person from Sidney, Nebraska to the defendant at Stillwater, Oklahoma; and (IV) caused a letter whose language is set out in the indictment to be delivered by mail to an addressee in Brady, Nebraska, which the defendant had theretofore placed in an authorized depository for mail matter at Stillwater, Oklahoma, 18 U.S.C. § 338, 1946 ed. [1948 Revised Criminal Code, 18 U.S.C.A. § 1341]. Both of the named Nebraska cities are in the territorial area of this division of this district. And Stillwater is within the boundaries of the Western District of Oklahoma.

The positively verified motion, by appropriate allegations, shows that the offenses charged in the several counts involved acts performed both in this district and in the Western District of Oklahoma. It then alleges that the defendant is and long has been a resident of Oklahoma;[2] that in his defense against the charges, if it be made in this division and district, he will be compelled at substantial expense either to transport counsel from Oklahoma to North Platte, Nebraska, or to employ counsel at the latter place, or—and quite probably—to undergo both of such burdens; that the lands and oil wells involved, the public records especially of the oil wells, the records and files incident to the litigation mentioned in the indictment, the records of titles to and liens on the property designated, both real and personal, the records touching the pipe line and the cost thereof and the many witnesses whose testimony will be required upon the trial, in part by the plaintiff but principally by the defendant, are in Oklahoma. From the situation

---

1. Only the more salient of the features of the fraudulent program are set out here.

2. Without exact computation, it may be understood that he and the evidentiary material mentioned in the motion and the lands involved are some six hundred miles from the court seat of this division.

thus summarized,[3] and his alleged want of adequate means, the motion asserts (in some measure as a conclusion from facts set out and not persuasively challenged) that he can not in anticipation of his trial foresee with prudent assurance the course which the government's proof may take upon the trial and, in view of the wide range of evidence allowable under the indictment, may not safely proceed to trial without having readily and immediately available all public records, including judicial proceedings relevant to the charges or any of them, and all witnesses possessing knowledge of the transactions involved and the matters and properties with which such transactions were concerned, all of which records, and all or nearly all of which witnesses are in Oklahoma. From the showing he argues, to some extent in his written motion and more explicitly upon its oral submission, that if the prosecution be proceeded with here, he can not make his defense with reasonable certainty touching the evidence to be brought against him, and with the sure availability of witnesses and relevant and material probative records supporting his position, and that his presentation in this district of such witnesses and documentary evidence as may be within his reach will involve expense beyond his competence to defray and grossly exceeding that which would attend a trial of the charges in the Oklahoma district.

Generally the government does not challenge the averments of the motion which are strictly factual. But it does question many of the inferences and conclusions which the defendant draws from those facts. In oral argument upon the motion its counsel estimated tentatively that in proof of its case the plaintiff will call some six witnesses resident in Nebraska and four from Oklahoma, besides one or two from other states, whose presence, however, is uncertain. The defendant by his counsel estimated that twenty-five witnesses from Oklahoma will reasonably be required in the making of his defense, of whom one or more may be included in the government's four witnesses from that state.

Rule 21(b), within which the motion is framed, and under which alone, if at all, it may be granted is in the following language: "The court upon motion of the defendant shall transfer the proceeding as to him to another district or division, if it appears from the indictment or information or from a bill of particulars that the offense was committed in more than one district or division and if the court is satisfied that in the interest of justice the proceeding should be transferred to another district or division in which the commission of the offense is charged."

■ It will be observed from the rule's language that a transfer may be made only upon the motion of the defendant. The present motion is so made. Then, before the court is required to effect the transfer of a proceeding, two further requirements must be met. The first is the disclosure by the indictment or information or a bill of particulars of an offense committed both in the district in which the prosecution is brought and in the district to which its transfer is requested, with the consequence that the accusation could have been made in either district. The parties agree that such a situation is present in this case. And that is clearly true. Each overt act charged in furtherance of the fraudulent scheme is alleged to have been initiated in one of the two districts mentioned and, proceeding continuously, to have been completed in the other. The prosecution, therefore, could have been commenced in either of the two districts. The final, and only unconceded, condition to the transfer is that the court be "satisfied that in the interest of justice the proceeding should be transferred" to the district to which its transfer is sought. Whether, in the light of the indictment and showing before the court, that finding should be made is the only subject of the court's further consideration.

Certain general reflections are implicit in any such study. They are not the material out of which the decision is woven, but are rather factors which contribute at least remotely to its pattern.

---

3. But much more particularly stated in the motion.

▆ In the first instance the choice of the site of prosecution of a multiple district federal crime naturally and necessarily rests with the Department of Justice.[4] Until the operative date of the quoted rule that election was unchallengeable by a defendant, with exceptions unrelated to the present problem. Even in the proper application of Rule 21(b), that prerogative of the prosecution ought not lightly to be nullified. Again, once instituted, a prosecution should only rarely and for good cause be withdrawn by judicial action from the area in which it has been brought, and probably from the management of counsel who have prepared it, especially if, as is true on this occasion, they have carried it before a grand jury. Nor should the judge of a district succumb to the temptation to eliminate cases from his dockets by any easy but specious device whose consequence is to cast upon others the disposition of controversies properly triable before him. Good order in the management of judicial business and in the handling of a prosecuting attorney's case load suggests the preliminary thought that criminal proceedings ought ordinarily to remain for final disposition in the districts and divisions where they are originally filed. Nor should a court be unduly solicitous respecting the preferences between available forums for his trial of a resident of one judicial district, who, bent on the fraudulent acquisition of other people's money or property, accomplishes his evil purpose by sporadic intrusions into another district in which his intended victims dwell. His not unnatural desire to be tried, if at all, in his own neighborhood is readily intelligible but hardly appealing, so long as it is regarded merely in the light of his personal wish and detached from factors rooted in considerations of justice.

▆ On the other hand, in the application of Rule 21(b) it has now to be recognized that a defendant need not suffer, without objection or possible relief, his prosecution in a remote district whose selection from two or more available areas involves, without controlling countervailing considerations, the imposition upon him of burdens, financial or otherwise, beyond his reasonable capacity to bear, or intercepts in practical effect the making of his appropriate defense, or threatens otherwise and unjustly to deny him a fair trial. Despite the suspicion of his guilt which may issue from his prosecution, he is protected by the presumption of innocence, rationally understood. A trial judge is at great pains to emphasize that presumption in his charge to a jury in the trial of a criminal case. He ought not altogether to neglect it himself, even in the preliminary phases of prosecution.

The novelty of the rule[5] necessarily results in a paucity of reported opinions instructive upon its application. Yet, there is some well considered authority touching it.

In United States v. Hughes Tool Co., D. C. Hawaii, 78 F.Supp. 409, 410, the court denied a motion to transfer from the District of Hawaii to the Southern District of California proceedings under an indictment returned in Hawaii, upon the ground that certain counts in the indictment were subject to presentation only in Hawaii and not in the mainland district and upon the legal assumption that a transfer may not be made of an indictment in several counts unless all counts could have been brought originally in the district to which transfer is sought. Concerning the several counts charging crimes committed in both districts, the court said, "I would not have the slightest hesitation in exercising my discretion in favor of the motion". And the support for that view lay, among other reasons, in the presence in California of nearly all of the many defendants, and most of the records involved and most of the witnesses, in the burden of transporting California counsel to or procuring counsel in remote Hawaii, and in the minimization of expense through a California trial. Such considerations were persuasive

---

4. See, among other statutory provisions, Title 18 U.S.C.A. § 3237, dealing with the subject generally, and specifically with offenses involving the use of the mails or transportation in interstate commerce, as "continuing" offenses.

5. It has been in effect since March 21, 1946.

despite the obvious prosperity of some at least of the defendants.

The District Court for the District of Maryland, in United States v. Erie Basin Metal Products Co., D.C.Md., 79 F.Supp. 880, granted a motion by four out of .six defendants named in an indictment, notwithstanding objection by the other two, for transfer to the Northern District of Illinois of the prosecution as to the moving defendants. It pursued that course in the face of the fact that in effect, it thereby also severed the prosecution of the four defendants from that of the objectors. The facts prompting the action may be summarized as including the residence of the moving defendants in or near Chicago, Illinois, the presence in or near Chicago of the vitally important books and records of the corporate defendant, and other books and records, the superior availability in Chicago of the greater number of the material witnesses, and the great and unnecessary hardship under which the moving defendants would have to proceed to Maryland for trial.[6]

United States v. National City Lines, D.C.Cal., 7 F.R.D. 393, 398, probably offers the clearest exposition and application of the rule. There the district court for the Southern District of California transferred to the Northern District of Illinois, the proceedings in the prosecution of National City Lines and several other corporations and individuals, for violation of Sherman Anti-Trust Act. In a scholarly opinion, Judge Yankwich examined the underlying historical reasons for the erection of Rule 21(b), and the essential significance in its present context of "the interest of justice", outlined the facts relevant to the motion for transfer and declared the reasons for his conclusion. With the citation of pertinent authority he proposed a reasonable test for the determination in a particular case whether its transfer will be in the interest of justice. Among other things, he said:

" * * * The abuses which led to the adoption of the rule give us criteria by which to determine whether the discretion should or should not be exercised in a particular case. In my own commentary, I used the terms 'hardship' and 'inconvenience.' We are not without judicial sanction for taking these factors into consideration. Courts have held that the indictment of a person away from his domicile which requires him to (1) go to a distant place, (2) to employ counsel in a distant city and (3) to bring his witnesses from afar are hardships to be considered. So is also, in the case of a corporate body, the fact that (4) its business headquarters are in another city, and (5) its records are there.

"There is also what Judge Medalie has called (6) 'the robbing' of another district 'of its rightful jurisdiction.' * * *

"So in this rule, also, we have an indication as to some of the elements—(7) fairness and (8) elimination of unjustifiable expense—to be considered in determining the meaning of the phrase 'in the interest of justice.' "

Finally, he announced his decision in the following language:

"Under the circumstances, I feel that the defendants have shown that the eight elements which, in the first portion of this opinion I indicated to be the criteria for determining whether a requested transfer would be in the interest of justice, exist in this case.

"We have here a prosecution which would compel the chief defendants (1) to go to a place distant from the location of their business; (2) to employ or bring counsel to a distant city; (3) to bring witnesses from afar; (4) their business headquarters are in another city; (5) most of the records which relate to the transaction on which the indictment is based are there. Under the circumstances, (7) fairness would be absent and (8) the defendants would be put to unjustifiable expense, if we deprived the United States District Court for the Northern District of Illinois, Eastern Division, (6) 'of its rightful jurisdiction.'

---

6. For more detail and particularity see Judge Coleman's analysis of the grounds of the motion, p. 882, and discussion of the reasons impelling him to take the action he followed, pp. 885, 886 of Vol. 79 F.Supp.

"I do not question the motive of the Government in instituting the prosecution in this district.

"But I am satisfied that a trial here would impose unnecessary hardships on the defendants and entail unjustifiable expense which it is the object of the new rules of criminal procedure, and especially of the rule under discussion, to avoid."

■ The government, in oral argument upon this motion, suggests that the persuasiveness of the case last cited is somehow neutralized or minimized by oblique references to it, with reservation of any expression concerning its validity, in the prevailing opinion in United States v. National City Lines, 334 U.S. 573, 593, 594 and footnote 42, 68 S.Ct. 1169, 92 L.Ed. 1584. There is not the slightest virtue in the tendered thought. An appellate court does not damn an inferior court's opinion by declining to pass upon its correctness, and that is especially true on occasions when the lower court's ruling is not at all involved in the matter pending on appeal. But even if it should eventually be held that a criminal prosecution under the Sherman Act is beyond the reach or operation of Rule 21(b), Judge Yankwich's opinion would have highly instructive value on the score of its careful study and employment of the rule in the general field of federal criminal jurisprudence.

Finally, Rule 21(b) underwent examination in United States v. Holdsworth, D.C. Me., 9 F.R.D. 198 in which the court returned to the court for the District of Massachusetts a case which had theretofore been transferred by the latter court to the District of Maine. The action of the Judge for the District of Maine in that case was based on his eventual conclusion that the indictment as returned included, along with counts subject to prosecution in either district, certain other counts which could have been found only in the court for the District of Massachusetts; in consequence whereof he further concluded that the initial transfer was improvident and erroneous and should be corrected by the return of the case to its original source. The defendant appealed from the order returning the case, but his appeal was dismissed on sundry grounds. In the course of its ruling, the court of appeals, Holdsworth v. United States, 1 Cir., 179 F.2d 933, held that the order returning the case to the court of initiation was not a final or appealable order, and also declared that the original order granting transfer was not reviewable by the judge of the court to which the transfer was first made.

■ Observations essentially similar to the one last noted respecting the immunity to review for merely erroneous action, of orders transferring proceedings under Rule 21(b) are to be found in United States v. National City Lines, Supreme Court case, supra, and Kott v. United States, 5 Cir., 163 F.2d 984. That position should prompt a judge in the consideration of such a motion to a degree of care and caution proper in circumstances involving final or relatively final action upon an important question.

An understanding of the broad purpose of Rule 21(b) and the situation from which it was designed to provide relief in appropriate circumstances, a proper appraisal of the general and practical considerations which a judge should invariably regard in the administration of his criminal docket on occasions of this sort, the analysis of the reported opinions interpreting and applying the rule, and especially the direct and simple language of the rule itself support a reasonably sure summary of the factors which should enter into the judicial determination whether "in the interest of justice" a proceeding should be transferred upon motion within the rule.

■ And first, the appraisal of the direction of "the interest of justice" rests in the mature and reasoned discretion of the court, to be exercised not arbitrarily or capriciously but according to recognized judicial standards. The question may not be answered upon the basis of any inflexible and universally applicable rule, but must be resolved in each case upon its peculiar facts and in its own setting, with the mature balancing of the factors pointing in divergent directions. The interests of the government, no less than those of the defendant, must be carefully regarded. While the financial position of a defend-

ant is not, itself or independently, a consideration arguing for the allowance or rejection of a motion under the rule in his behalf, his comparative poverty may, nevertheless, be a persuasive item in arriving at a conclusion as to whether, without unjust hardship—and in some instances at all—he may be able adequately to make his defense, to procure the assistance of counsel, and to produce needed witnesses and other evidence, in a district remote from that of his residence. Specific factors to be regarded, among many others, include the substantially superior availability in one of the two districts of evidence, including individual witnesses, the records of titles to property, real or personal, the records of public administrative offices, and the files, dockets and other records of judicial proceedings; the location in one of the districts of all or nearly all of the tangible property, if any, involved in the charges; the reasonable protection of a defendant against the alternative burdens of the hazard of surprise in the content of the government's case and of the costly transportation to and maintenance in a remote district's court seat of witnesses and documents whose actual presentation in the trial may prove unnecessary in consequence of the ultimate but unpredictable limitation of the scope of the government's testimony; the expense of procuring the attendance of an attorney at a distant place of trial or of employing counsel resident at such place, with probable duplication of legal talent and the cost thereof; and the uncertainties and expense of attendance at sessions of court upon the case, preliminary to its actual trial.

 All such matters being regarded in the present case, the court is satisfied that in the interest of justice the transfer requested in the motion should be made. Beyond serious question, the property which was the subject of the allegedly fraudulent scheme of the defendant is in Oklahoma, most of it in the area of the Western District of that state; the evidence supporting or repelling the inference of fraud is largely there; the defendant lives there; much the greater number of the probable witnesses also have that residence; the judicial and other public records which will probably be in evidence upon the trial are entirely there; and counsel for the defendant already and properly employed is an Oklahoma City attorney. In large part, the crime, if there be one, has an Oklahoma setting. The defendant is quite certainly a man of modest means, and this despite his probable handling of fairly large sums of money in the ventures adverted to in the pleadings. But those ventures were hazardous and, one gathers, ended disastrously to the defendant, as well as to others. To be ready for, and participate in, his trial in Nebraska he would have to bring his attorney to North Platte. He would also necessarily bring for that considerable distance many records or copies thereof and numerous witnesses, not all of which or whom may prove to be necessary, but the anticipatory elimination of any of which or whom would be rash and imprudent. Such action would involve him in vastly greater expense than he would incur in a trial in Oklahoma, to which the unpalatable alternative—and that only partial—would be the dangerous exposure of his liberty that would be involved in leaving much of his documentary evidence and many of his witnesses beyond reach at the time of trial upon the dubious assumption and hope that they might not be needed.

The court is prepared to grant that the government may undergo some added expense in the event of a trial in Oklahoma. But it will be inconsiderable. Several of its witnesses are Oklahomans. Besides, it has the advantage, in the matter of expense, of proceeding with its evidence at the opening of the trial. The defendant must have most of his witnesses ready for call at the opening of a trial, although they may be compelled to wait for some days for their actual presentation before the court.

 It is not suggested that any general sentiment or opinion prevails in Oklahoma, which may be expected to be either improperly tolerant of any misdeeds of the defendant or cynically contemptuous of

the plight of his alleged victims.[7] In default of such a contention, the court will not gratuitously assume that Oklahoma jurors are or will be remiss in the performance of their duties.

An order is being entered accordingly.

7. To the limited extent, of course, that they may be considered to be classified in that fashion.