**UNITED STATES of America,**
**Plaintiff,**

v.

**Milton LUROS et al., Defendants.**

**Cr. No. 65–Cr–3007–W.**

United States District Court
N. D. Iowa, W. D.

June 29, 1965.

Donald E. O'Brien, U. S. Atty., Sioux City, Iowa, for plaintiff.

Stanley Fleishman, Hollywood, Cal., Percy Foreman, Houston, Tex., for defendants.

HANSON, District Judge.

On March 24, 1965, a grand jury for this District returned an indictment in twenty-five counts against the defendants. Count 1 charges a violation of Section 371, Title 18, United States Code, in that all of the defendants conspired together to violate the federal obscenity statutes. Counts 2 through 8, 10 through 12, and 19 through 25 charge that certain defendants used the mails for the carriage and delivery of obscene books and magazines in violation of Section 1461 of Title 18. Additional violations of Section 1461 are charged in Counts 9 and 15 in that certain defendants used the mails for the carriage and delivery of advertisements giving information where, how, from whom, and by what means obscene books and magazines might be obtained. Counts 13, 14, and 16 through 18 charge that certain defendants used a common carrier for carriage of obscene magazines in interstate commerce in violation of Section 1462 of Title 18. Each substantive count alleges that the obscene matter was mailed or shipped from North Hollywood, California, to a point in this District.

## I.

The defendants have filed a motion to dismiss the indictment in which they allege numerous grounds for dismissal of the indictment and the individual counts thereof. They strongly urge that the Court rule at this time on the obscenity of the books and magazines named in the indictment. The Court has received from defendants' counsel several books and magazines. The defendants state that these are the books and magazines that are alleged to be obscene and that they are the basis for the indictment. The Court observes that the titles on the books and magazines received correspond to the titles stated in the indictment. However, the Court expresses no opinion as to whether this is the allegedly obscene matter or whether it is in fact obscene and outside the protection of the First Amendment. Although the greater part of the defendants' brief is devoted to an argument of their view of the constitutional standards for determining the issue of obscenity, that issue is not before the Court on this motion.

A motion to dismiss the indictment is not a device for a summary trial of the evidence. The sole function of this motion is to test the sufficiency of the indictment to charge an offense. United States v. Sampson, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962). The sufficiency of the indictment must be determined from the words of the indictment, and the Court is not free to consider evidence not appearing on the face of the indictment. In ruling on this motion, all well-pleaded facts are taken to be true. United States v. South Florida Asphalt Co., 329 F.2d 860 (5th Cir. 1964); Padilla v. United States, 278 F.2d 188 (5th Cir. 1960).

The indictment in this case charges that the books and magazines are obscene. The defendants disagree. But on this motion to dismiss, that statement is taken to be true. The resolution of the dispute about the facts must await the trial. At this state of the case, no books or magazines have been admitted in evidence, and no evidence has been received on the other factors that must be considered in making a judgment on the issue of obscenity.

For support of their contention, the defendants rely on Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964). In his opinion, Mr. Justice Brennan quotes from Lockhart and McClure, Censorship of Obscenity: The Developing Constitutional Standards, 45 Minn.L.Rev. 5, 116 (1960):

" 'This obligation—to reach an independent judgment in applying constitutional standards and criteria to constitutional issues that may be cast by lower courts "in the form of determinations of fact"—appears fully applicable to findings of obscenity by juries, trial courts, and administrative agencies. The Supreme Court is subject to that obligation, as is every court before which the constitutional issue is

raised.' " 378 U.S. at 188, 84 S.Ct. at 1678, note 3.

This quotation is part of an analysis of the role of the Supreme Court in obscenity cases. It had been suggested that the issue of obscenity should be treated as a factual judgment on which the jury's verdict is all but conclusive, or that the determination should be left to the lower courts with only limited review by the Supreme Court. The Court rejected this view as inconsistent with its duty to uphold constitutional guarantees. The appellate courts must make an independent judgment on the issue of obscenity. This court does not now decide the extent to which this court may have a similar duty when the issue is properly presented to it. However, that issue is not now before this court. Nothing in Jacobellis v. State of Ohio indicates an intent of the Supreme Court to overrule the established rule that well-pleaded facts must be taken as true on a motion to dismiss the indictment.

█ The question whether a particular book or magazine is within the protection of the First Amendment requires a delicate constitutional judgment. This is not a judgment that can be made at a high level of abstraction. An independent evaluation must be made of the facts of each case. Jacobellis v. State of Ohio, supra. The facts of an obscenity case cannot be adequately judged by a mere reading of the indictment supplemented by the defendants' informal offer of evidence.

If the Court were now to rule on the obscenity of these books and magazines and grant the defendants' motion to dismiss the indictment, an equally intolerable situation would result on appeal. A decision on the issue of obscenity involves considerations of fact as well as of law, but the appellate courts would be called upon to review that decision on a record devoid of evidence. In United States v. Fruehauf, 365 U.S. 146, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961), the trial court did what the defendants would have this Court do in this case. It dismissed an indictment that was valid on its face because the court anticipated that the evidence would not prove the offense charged. On appeal, the Supreme Court remanded the case for trial, stating that an appeal at that preliminary stage was merely a request for an advisory opinion.

On this motion to dismiss the indictment, the Court assumes that the allegation of obscenity is true. If the evidence fails to prove the charge of obscenity or any other element of the offenses, the Court will rule on that issue when it arises.

## II.

The defendants challenge the sufficiency of the indictment on the ground that it does not contain all the essential ingredients of an obscenity indictment. The indictment charges, in the statutory language, that the books and magazines are "obscene, lewd, lascivious, indecent, and filthy." The defendants contend that a valid obscenity indictment must charge: (1) that the particular book or other communication involved substantially exceeds customary limits of candor, in the nation as a whole, in the description or representation of matters pertaining to sex, nudity or excretion; (2) that the dominant theme of the material taken as a whole appeals to the prurient interest of the average person; (3) that the material involved is utterly without ideas, or literary, or scientific, artistic value, or any other form of social importance; (4) that the accused know that the particular book or other writing involved is obscene, that is, substantially exceeds contemporary community standards in the nation as a whole, appeals to prurient interest, and is utterly without social importance.

█ It is apparent that the defendants' first three "essential ingredients" merely represent the defendants' version of the legal definition of obscenity. But an indictment need not allege the definition of legal terms. A charge that books and magazines are obscene necessarily refers to and incorporates the legal definition of obscenity.

An indictment is sufficient if it (1) alleges all of the elements of the offense, (2) fairly informs the defendants of that which they must be prepared to meet in the preparation of their defense, and (3) enables them to plead an acquittal or a conviction in bar of future prosecutions for the same offense. Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932); United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953); Stapleton v. United States, 260 F.2d 415, 17 Alaska 713 (5th Cir. 1958); United States v. Bagdasian, 291 F.2d 163 (4th Cir. 1961). This indictment satisfies each of these requirements.

An indictment that charges an offense in the words of the statute is sufficient if the words of the statute contain all the elements of the offense. Babb v. United States, 218 F.2d 538 (5th Cir. 1955); United States v. Palmiotti, 254 F.2d 491 (2d Cir. 1958); United States v. Foster, 253 F.2d 457 (7th Cir. 1958).

The exception to this rule is illustrated by the recent case of Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Spears v. State, 175 So.2d 158 (Supreme Ct. Miss.). In the Russell case, the indictment charged in the words of the statute that the defendants refused to answer questions that "were pertinent to the question then under inquiry" by a committee of Congress. The Supreme Court held the indictment to be insufficient because it did not state the subject which was under inquiry. The Supreme Court stated:

> "[T]he very core of criminality under 2 U.S.C. § 192, 2 U.S.C.A. § 192 is pertinency to the subject under inquiry of the questions which the defendant refused to answer. What the subject actually was, therefore, is central to every prosecution under the statute. Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute."

The present case involves different considerations. The definition of obscenity is a question of law rather than of fact. Unlike the question under inquiry before the Congressional committee the definition of obscenity does not change with each indictment. The allegation of obscenity in the words of the statute is sufficient.

An obscenity indictment need not charge that the defendants know the books and magazines were obscene. The indictment must charge that the defendants had knowledge of the contents of the books and magazines they distributed. Smith v. People of State of California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). However, the defendants' belief as to the obscenity of the books and magazines is irrelevant. Rosen v. United States, 161 U.S. 29, 16 S.Ct. 434, 40 L.Ed. 606 (1896); Kahm v. United States, 300 F.2d 78 (5th Cir. 1962); Schindler v. United States, 208 F.2d 289 (9th Cir. 1953).

The indictment charges that the defendants "knowingly" distributed the books and magazines through the mails and interstate commerce. The word "knowingly" indicates knowledge of all the essential facts, including the contents of the books and magazines. No further allegation of knowledge is necessary. Price v. United States, 165 U.S. 311, 17 S.Ct. 366, 41 L.Ed. 727 (1897); Rosen v. United States, 161 U.S. 29, 16 S.Ct. 434, 40 L.Ed. 606 (1896); United States v. Martinez, 73 F.Supp. 403 (M.D.Pa.1947).

### III.

Obscenity is not speech or press within the protection of the First Amendment. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

The venue provisions of Sections 1461 and 1462 are within the legislative discretion of Congress. Use of the mails or interstate commerce may involve acts in several states as part of the same offense. Congress may make such use a continuing offense. Where,

as in this case, a continuing offense is charged, the defendant may be prosecuted in the district of deposit, in the district of delivery, or in any district through which the obscene material passed. Travis v. United States, 364 U. S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961); United States v. Cores, 356 U.S. 405, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958); United States v. West Coast News Co., 30 F.R.D. 13, (W.D.Mich.1962).

█ The standards for judging the obscenity of the books and magazines are the same in this district as they are in any other district. Jacobellis v. State of Ohio, supra. The defendants' rights are fully protected under the venue provisions of Sections 1461 and 1462.

### IV.

█ Count 1 of the indictment charges a violation of Section 371 of Title 18 in that the defendants conspired to violate Sections 1461 and 1462. This count charges a single conspiracy even though the object of the conspiracy was to commit several offenses. This is a single offense, and the count is not duplicitous. Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942); Williams v. United States, 238 F.2d 215 (5th Cir. 1956).

█ Count 1 is not barred by the five-year statute of limitations. The indictment must allege only that the conspiracy was in existence and that at least one overt act was committed by one of the conspirators in this district during the period of limitations. Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). The defendants' contention that the application of the conspiracy statute in an obscenity prosecution is unconstitutional is without merit. Obscenity is not protected by the First Amendment. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

█ Counts 9 and 15 charge that certain defendants used the mails for the delivery of a letter and a magazine, each containing an advertisement giving information where, how, from whom, and by what means obscene books and magazines might be obtained. It is not necessary that the indictment set out the language of the advertisements. Bartell v. United States, 227 U.S. 427, 33 S.Ct. 383, 57 L.Ed. 583 (1913); United States v. Schillaci, 166 F.Supp. 303 (S.D.N.Y. 1958); c.f. Spears v. State, supra.

### V.

█ The defendants state in their brief that some of the defendants were indicted in a state court in California on obscenity charges involving the nudist magazines named in Counts 3, 5, 7, and 8 of this indictment. They further state that a judge of the California court dismissed a count of the California indictment based on those nudist magazines. Assuming these statements to be true and assuming that the California court found the magazines to be not obscene, the defense of double jeopardy is nevertheless inapplicable. The defendants were never placed in jeopardy under the state indictment because the indictment was dismissed before trial. Hunter v. Wade, 169 F.2d 973 (10th Cir. 1948); Hurst v. People of State of California, 211 F.Supp. 387 (N.D.Cal.1962).

█ Even if the defendants had been placed in jeopardy under the California indictment, this prosecution would not constitute double jeopardy because the two prosecutions are by different governments and under different laws. Bartkus v. People of State of Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959).

█ The determination of the California court on the obscenity of the nudist magazines is not res judicata in this case. The doctrines of res judicata and collateral estoppel apply only to actions involving the same parties. The United States was not a party to the California prosecution, and its power to enforce its criminal laws cannot be affected by the decision of a state court in a case to which it was not a party.

Smith v. United States, 243 F.2d 877 (6th Cir. 1957).

## VI.

The defendants state that this prosecution is an unfair use of the criminal law and that it is contrary to civilized standards of criminal justice. However, the defendants' brief does not indicate their basis for this charge. It appears that this charge is only a reassertion of the defendants' belief that the books and magazines involved in this indictment are not obscene. This is not a proper time for determination of that issue.

The defendants have supplied the court with opinions or orders from several courts wherein the judge ruled on the issue of obscenity on a motion to dismiss or summary judgment. Those cases are: People v. Luros, et al. (Criminal No. 295183 Calif.Sup.Ct.); Royal News Co. v. Schultz and Moore, 230 F. Supp. 641 (U.S.D.C.E.D.Mich.); United States v. Frew (Criminal No. 39714, U.S. D.C. for E.D. of Mich.). The Royal News case was adjudicated on summary judgment. The same was in effect true in People v. Luros because the veil of the indictment was pierced. Frew was based on a motion to dismiss.

This court is not convinced that in a criminal matter the action can be adjudicated in this type of proceeding which is in effect a summary judgment proceeding. In the interest of justice, of course, criminal procedure should be the same in all jurisdictions. Nonetheless, this court cannot follow the procedure apparently used in the Frew case. This court believes that it is in the best interest of all criminal actions to hear all the evidence and not to pierce the indictment on a motion to dismiss.

The Court finds that the indictment is sufficient. Accordingly, It Is Hereby Ordered that the defendants' motion to dismiss the indictment and every separate part thereof is denied.

## On Motion for Suppression of Evidence

This matter comes before the Court upon the motion of the defendants for the return of property and the suppression of evidence. The motion has attached thereto the affidavit of Hugh R. Manes as support for the allegations of the motion.

The plaintiff has filed a resistance to said motion and has filed the affidavit of Donald E. O'Brien, United States Attorney, as support for the allegations of the resistance.

The court will first take up the matters set out in the defendants' motion.

The defendants request the return of books, records, and documents allegedly unlawfully seized in violation of the Fourth Amendment, and rely on the propositions that the subpoenas were too broad, vague, and lacking in specificity. The defendants also rely on an alleged lack of due process they are entitled to by reason of the Fifth Amendment. The defendants further rely on the allegation that the prosecutor agreed to return the records. The defendants further urge that in the area of First Amendment rights the closest scrutiny of search and seizure matters be observed.

The plaintiff resists the request for return of the books, records, and documents, and alleges that the subpoenas, after the Court's ruling, were relevant to the purposes of the inquiry, described the records sought with reasonable particularity, and were confined to a reasonable time. The plaintiff further states that the Grand Jury had, at the time of the issuance of the subpoenas, competent evidence concerning each defendant later indicted. The plaintiff urges that the privilege against self incrimination does not extend to corporations, nor can it be invoked by an individual defendant with respect to records of the corporations which might incriminate him.

The plaintiff further urges that the agreement to return the documents was based on the contention that they were sorely needed to permit the defendant corporations to file income tax returns for 1964, and that the other records were supposedly the only records in existence. The plaintiff urges that this alleged contention later proved to be erroneous when

the existence of photostats was made known.

The Sun Era subpoena requested production of Sun Era's General Ledger, General Journal, Subsidiary Ledger, Cash Receipts Journal, Cash Disbursements Journal, Minute Book, Accounts Payable Records, Accounts Receivable Records, Asset Accounts, Liability Accounts, Adjusting Journal Entries, Stock Record Book, all of its invoices, its cancelled checks, subscriber mailing lists, advertiser mailing lists, correspondence, bank statements, deposit slips, payroll records, savings accounts Forms 1099 issued, and morgue copies of each issue. These records and materials were sought for the period from January 2, 1962 through November 30, 1964. The three remaining subpoenas were narrower in scope. They required each of the corporate addresses to produce its General Ledger, General Journal, Subsidiary Ledgers, Cash Receipts Journal, Cash Disbursements Journal, Minute Book, Accounts Payable Records, Accounts Receivable Records, Stock Record Book, Adjusting Journal Entries, all its invoices, its cancelled checks and its payroll records. These records and materials were required for the period from January 2, 1962 to November 30, 1964.

During the course of the Grand Jury proceedings, the Government voluntarily reduced the scope of the subpoenas.

It was, and still is, the view of this Court that the subpoenas were still too broad, and this Court, on its own motion and in the exercise of its discretion under the provisions of Rule 17(c) of the Federal Rules of Criminal Procedure, modified the four subpoenas so as to require the corporations to produce only their General Ledgers, Cash Receipts Journals, Cash Disbursement Journals, Minute Books, Stock Record Books and Cancelled Checks.

■■■ It is settled law that a corporation has the right to invoke the Fourth Amendment to protect itself from a subpoena duces tecum which is so sweeping as to constitute an unreason-

able search. FTC v. American Tabacco Co., (1924) 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696; Hale v. Henkel, (1906) 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652. The general principles which emerge from the cases establish that in order to overcome Fourth Amendment objections, a Grand Jury subpoena must be relevant to the purposes of the inquiry, must describe with reasonable particularity the papers to be produced, and must be confined to a reasonable period of time. In re Grand Jury Subpoena Duces Tecum, (S.D.N.Y.1961) 203 F.Supp. 575, and cases cited therein.

■ Besides investigating the distribution of obscene materials, the Grand Jury may properly investigate the existence of a conspiracy to distribute such materials. It is the view of this Court that an investigation of this sort can reasonably extend to the records of those corporations which the jury has probable cause to believe are involved in the conspiracy. Inspection of those corporate records can be expected to reveal relevant information such as the names of the conspirators, the scope of the conspiracy, and the methods employed by the participants to achieve their objectives. Much of this information is also relevant to the jury's investigation of the substantive offense.

■ The Court feels that the final scope of the subpoenas was not too broad, nor were they vague and lacking in specificity.

■■ The Court will now take up the matter of the Fifth Amendment as urged by the defendants. The defendants seek to invoke the Fifth Amendment privilege against self incrimination with respect to the subpoenas duces tecum. Whether it is urged by the individuals or on behalf of the corporations, the claim is without merit. The privilege against self incrimination does not extend to corporations. Curcio v. United States (1957) 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225; United States v. White, (1944) 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542; Fleming v.

Montgomery Ward (7th Cir. 1940) 114 F.2d 384, Cert. den. 311 U.S. 690, 61 S. Ct. 71, 85 L.Ed. 446. Its protection is confined to natural persons and only to the private papers of such persons. Rogers v. United States (10th Cir. 1951) 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344. Consequently, the individual defendants have no standing to object and this is true even though the corporate records might incriminate them personally. Wilson v. United States (1911) 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771; United States v. White (1944) 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542; Christianson v. United States (8th Cir. 1955) 226 F.2d 646.

■ As to the contention that the United States Attorney promised the return of the subpoenaed documents, this Court will not make a determination as to the conflicting allegations set out by the attorneys. It appears that the Government has the originals and the defendants have copies. This would allow both litigants to adequately prepare.

It has been held that the Government may retain copies of subpoenaed documents even after the dismissal of an indictment. Maryland and Virginia Milk Producers Ass'n v. United States (1957) 102 U.S.App.D.C. 100, 250 F.2d 425.

■ Likewise, this Court has the discretion to defer any decision regarding the return of property until time of trial. United States v. Lester (D.C.N.Y. 1957) 21 F.R.D. 30; United States v. Leiser (D.C.Mass.1954) 16 F.R.D. 199.

■ Rule 41(e) Federal Rules of Criminal Procedure only provides for the return of defendants' documents in cases where a search and seizure is held unlawful. Absent such a determination or dismissal of the present indictment, the defendants have no right to a return of the subpoenaed documents. United States v. Wallace & Tiernan Co. (R.I.1949) 336 U. S. 793, 69 S.Ct. 824, 93 L.Ed. 1042.

■ It is clear that the Government is entitled to retain and use at a trial, articles seized by valid warrant. United States v. Pardo-Bolland (D.C.N.Y.1964) 229 F.Supp. 473; Padilla v. United States (C.A.Cal.1959) 267 F.2d 351, Cert. den. 361 U.S. 834, 80 S.Ct. 85, 4 L.Ed. 75, Rehearing den. 361 U.S. 898, 80 S.Ct. 195, 4 L.Ed.2d 154.

■ The Court would now take up the defendants' contentions concerning the area of First Amendment rights. This Court would agree that procedural violations, including search and seizure violations, require the closest scrutiny by the Courts and that compliance with the strict standards of the Constitution is uniformly required.

The Court is familiar with the cases cited as to this proposition by the defendants, and feels that since they involved ex parte issuance of warrants against alleged obscene publications not accurately specified that they are not parallel to our problem here.

■ This Court feels that the First Amendment rights of the defendants have not been violated.

Accordingly, It Is Hereby Ordered that defendants' Motion for the Return of Property and Suppression of Evidence is hereby overruled in its entirety.

On Motion for Bill of Particulars

The defendants have filed a motion for a bill of particulars consisting of 43 paragraphs. Some of the paragraphs contain subdivisions, so that defendants' motion makes a total of 98 separate requests for further information. Seventeen requests have been disposed of by consent of the parties. The Court has examined each of the remaining requests and finds that the Government should not be required to provide the requested information.

■ A bill of particulars should be granted when the indictment is too general or indefinite. The Government may be required to state facts that are necessary to enable the defendant to prepare his defense and avoid surprise at the trial. The offense charged must be made sufficiently identifiable so that the defendant can plead an acquittal or conviction in bar of a subsequent prosecu-

tion for the same offense. The function of a bill of particulars is to clarify the indictment. However, if the indictment is clear and definite, a bill of particulars may not be used for the purpose of discovering the Government's evidence or legal theory.

Fischer v. United States, 212 F.2d 441 (10th Cir. 1954);

United States v. Gris, 146 F.Supp. 293 (S.D.N.Y.1956);

■ United States v. Kelly, 10 F.R.D. 191; 92 F.Supp. 672 (W.D.Mo. 1950). Paragraphs 1 and 2 of the defendants' motion ask for the definitions of the words "obscene", "lewd", "lascivious", "indecent", and "filthy". The Government is not required to state the definitions of legal terms. See: United States v. Frew, 187 F.Supp. 500 (E.D. Mich.1960).

■ In paragraph 3 of their motion, the defendants request the names and addresses of the common carriers allegedly used by them. This information is part of the details of the Government's evidence and is unnecessary to clarify the indictment. In any event, the names of the common carriers are as well known to the defendants as to the Government. The defendants' affidavit in support of their motion does not state that they lack this information. See United States v. West Coast News Company, 216 F. Supp. 911 (W.D.Mich.1963).

■ Paragraphs 4, 5, 6, 8, 9, and 10 ask for the names of defendants who were present at certain places and times, and they seek various other information concerning Count 1 of the indictment. All of these matters are evidentiary and are not necessary to clarify the charges against the defendants.

■ Paragraph 7 requests the names of the "diverse other persons" with whom the defendants allegedly conspired. This request is answered by the statement in Count 1 that the names of the other members of the conspiracy are to the Grand Jury unknown.

■ Paragraphs 12, 14, 16, 18, 22, 24, 26, 28, 29, 38, and 41–H request various documents and other information such as letters, photographs, photographic releases, a check, a certificate of business, and an advertisement. All of these documents are of a type that the defendants would be expected to retain in their files. In the absence of an affidavit stating that they do not have these documents, the Court assumes that these documents are as well known to the defendants as to the Government.

■ Paragraph 27 of the defendants' motion is as follows:

"With respect to 'Overt Act 17', as alleged in this Count of the Indictment:

(a) State which of the defendants it is claimed knowingly caused the mails to be used for the mailing and delivery of the magazine alleged in said overt act;

(b) State whether it is charged that the dominant theme of the magazine named in said overt act, taken as a whole, substantially exceeds the limits of candor, in the Nation as a whole, in the description or representation of matters pertaining to sex, nudity or excretion;

(c) If the answer to (b) above is 'yes', set forth the dominant theme of the magazine and the manner in which the dominant theme of the magazine, taken as a whole, substantially exceeds the limits of candor, in the Nation as a whole, in the description or representation of matters pertaining to sex, nudity or excretion;

(d) With respect to the said magazine, state whether it is charged that the dominant theme of the said magazine, taken as a whole and applying national contemporary community standards, appeals to the prurient interest of the average person;

(e) If the answer to (d) above is 'yes', set forth a definition of 'prurient interest' and the manner in which the dominant theme of the

said magazine appeals to said 'prurient interest';

(f) With respect to the said magazine, state whether it is charged that said magazine advocates no ideas and has no entertainment, literary, scientific or artistic value, or any other form of social importance;

(g) Set forth in what manner each of the defendants knew that the said magazine named in this overt act was 'obscene, lewd, lascivious, indecent and filthy', as alleged in said overt act."

Paragraphs 37, 39, 40, 41, 42, and 43 make identical requests for information in regard to the books and magazines. Subparagraph (a) is answered by the indictment, which states in each count the names of the defendants who are charged with knowingly using the mails or a common carrier to transport obscene books and magazines. The remainder of paragraph 27 does not request the Government to state further facts. It asks that the Government set out its legal theory in this case. However, the Government's legal theory is not a matter that may be inquired into by a bill of particulars. Kempe v. United States, 151 F.2d 680 (8th Cir. 1945); United States v. Schillaci, 166 F.Supp. 303 (S.D.N.Y.1958).

██ Each of the requests made in the defendants' motion for a bill of particulars asks for information either as to the details of the Government's evidence or as to its legal theory. Much of the information requested is already available to the defendants. This indictment clearly and specifically states the offenses with which the defendants are charged. None of the information requested is necessary for the defendants to prepare their defense or to plead this case in bar of a subsequent prosecution.

Accordingly, It Is Hereby Ordered that the defendants' motion for a bill of particulars is denied, except to the extent that it has been complied with by consent of the parties.

### On Motion to Transfer Venue

The defendants in the present case were indicted by a grand jury in this district on charges of conspiracy to violate and violation of Title 18, United States Code, Sections 1461 and 1462. They now move to transfer the venue of their trial to the Southern District of California under the provisions of Rule 21(b) of the Federal Rules of Criminal Procedure. In so moving, the defendants assume the burden of establishing: (1) that the offenses with which they are charged were committed in the district to which they request transfer, and (2) that it will be in the interest of justice to make such a transfer. United States v. Warring, 121 F.Supp. 546 (D.Md.1954).

The Government's indictment contains twenty-four substantive counts and one conspiracy count. Each of the substantive counts alleges a mailing or interstate transportation from North Hollywood, California, which is in the Southern District of that state, to a location within this district. The indictment's single conspiracy count enumerates 29 separate overt acts, some allegedly occurring in this district and others in the Southern District of California.

██ Both 18 U.S.C., Sections 1461 and 1462 describe continuing offenses. They, therefore, permit venue to be laid in the districts from which and into which obscene matter moves. The case law regarding venue in conspiracy cases is similarly clear. A conspiracy may be prosecuted at the place where it was formed. See Dealy v. United States, 152 U.S. 539, 14 S.Ct. 680, 38 L.Ed. 545, (1893), or where any of the overt acts were committed. Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1911). Thus, in the present case, the constitutional requirement that a criminal prosecution take place in the "district wherein the crime shall have been committed," is met, whether the trial is held in the Northern District of Iowa or in the Southern District of California. U. S. Constitution, Article III, Section 2 and Amendment VI. Apart from this one constitutional requirement, Rule 21

(b) is solely an expression of judicial and Congressional policy. See Platt v. Minnesota Mining and Manufacturing Co., 376 U.S. 240, 245, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964) and United States v. National City Lines, 7 F.R.D. 393 (S.D. Cal.1947).

The proper application of Rule 21(b) must be determined from its language, from the considerations which led to enactment, and where possible, from the body of case law which it has fostered. The initial choice of venue in a criminal case is naturally a prerogative of the prosecution. The importance of assuring good order in the management of judicial business and efficient handling of a prosecuting attorney's case load, requires that a defendant demonstrate a substantial balance of inconvenience to himself if he is to succeed in nullifying this prerogative. United States v. United States Steel Corporation, 233 F.Supp. 154 (S.D.N.Y.1964); United States v. Cohen, 35 F.R.D. 227 (N.D.Cal.1964); United States v. White, 95 F.Supp. 544 (D.Neb.1951). In the words of Judge Weinfeld:

> "(To) warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome; and, necessarily, any such determination must take into account any countervailing considerations which may militate against removal." United States v. United States Steel Corporation, supra, 233 F.Supp. at 157.

The defendants have suggested numerous reasons why their motion should be granted. These reasons resolve themselves into two basic contentions. First, the defendants have claimed that a trial away from the vicinage would be very burdensome to them. Second, they have argued that their prosecution, especially for offenses allegedly committed in this district, is unwarranted.

The Supreme Court has only recently had occasion to reaffirm that a defendant has no constitutional right to a trial in his home district. Platt v. Minnesota Mining and Manufacturing Co., supra, 376 U.S. at 245, 84 S.Ct. at 772. The significance of a defendant's place of residence, for purposes of a Rule 21(b) determination, lies in the additional burdens which are imposed when his trial is held away from that residence. Platt v. Minnesota Mining and Manufacturing Co., supra, at 245–246, 84 S.Ct. at 772–773. The defendants in the present case complain of essentially three specific hardships which will ensue if they are tried in this district. They aver: (1) that they will not be able to conduct their business activities and meet their family responsibilities; (2) that they will be physically and economically taxed if they are required to transport their attorneys, their witnesses, and themselves to Iowa; and (3) that their living expenses during the course of a trial here will be "staggering."

The Government properly pointed out, in its reply brief, that "every litigation, particularly a criminal prosecution, imposes burdens upon a defendant and brings in its wake dislocation from normal occupational and personal activities."

> " * * * (N)o matter where this trial is conducted, there will be inconvenience to the parties, * * * their counsel and their witnesses. But mere inconvenience, interference with one's routine occupational and physical activities, and other incidental burdens which normally follow when one is called upon to resist a serious charge do not ipso facto make the necessary showing that a transfer is required in the interest of justice. * * * " United States v. United States Steel Corporation, 233 F.Supp. 154, 157 (S.D. N.Y.1964).

The court does not believe that the necessity of travelling to the place of trial will substantially increase the physically taxing effect which a criminal trial nor-

mally has on the defendants and attorneys who are involved. Indeed, since one of the two defense attorneys resides in Texas, he will be forced to travel no matter in which of the two available districts the trial is held.

It is true that a trial in Iowa will require the defendants' witnesses to suffer the inconvenience of travelling to this district. However, the defendants have not indicated how many witnesses they expect to call. In view of the nature of the case, the court has no reason to assume that their number will be considerable. For its part, the Government has stated that, while its trial plans are as yet incomplete, it anticipates that no more than two of the fifteen witnesses it expects to use to prove its substantive allegations will be required to travel here from the Southern District of California. These facts fail to demonstrate a substantial balance of inconvenience to the defendants' witnesses.

The defendants have offered estimates as to the amount of certain of their trial expenses. Whatever the accuracy of these estimates, there can be no doubt that the expenses of transporting the defendants, their attorneys and their witnesses to this district, and of maintaining them once here, will be substantial. All trials away from the vicinage necessarily increase, in varying amounts, the costs which a defendant must bear. But the magnitude of these additional expenses is not, per se, a determinative factor in considering a motion to transfer. Were this not so, an impoverished defendant, barely able to assume the cost of a trial in his home district, would have no recourse if he were indicted in an adjacent district where the consequent increase in the cost of trial, although slight, would be for him insupportable. The obvious injustice of this result demonstrates that it is not the size of the additional expense but the defendant's ability to bear that expense, that is the relevant consideration in questions of transfer. United States v. White, supra.

The facts which have emerged during the course of these proceedings indicate that the defendants have been engaged in the business of publishing and distributing magazines and pocket books for a number of years. Substantial quantities of their publications are sold throughout the country and they appear to have considerable financial resources. There is no reason to assume that a seemingly established and prospering business operation cannot continue to run, during the few weeks of trial, without the physical presence of the defendants. Even if this prosecution were held in California, the normal demands of a trial could be expected to severely limit the personal participation of the defendants in the operation of their business. Moreover, there is no evidence that the defendants need to depend on their earnings during trial to help defer the costs of their defense. This Court believes that the defendants are well able to make their defense and produce needed witnesses and other evidence in this district.

We have already alluded to the defendants' second basic contention in support of their motion to transfer. The defendants have argued that this prosecution is unjustified because their materials are constitutionally protected and because the Government has indicated its approval of their actions by making no objection to their distributions in the past. They go on to charge that the present prosecution is nothing more than an effort to put them out of business. This court finds no merit in these arguments.

Rule 21(b) of the Federal Rules of Criminal Procedure was enacted to alleviate the undue hardships which defendants sometimes suffer when forced to defend themselves in places far distant from their homes. United States v. National City Lines, 7 F.R.D. 393 (S. D.Cal.1947). Logically, therefore, the considerations which are relevant to the application of the rule are those which relate to the merits of trying a case in one district as opposed to trying it in another. See United States v. White, supra, United States v. Erie Basin Metal Products, 79 F.Supp. 880 (D.Md.1948); United States v. National City Lines,

supra. The defendants' contentions do not meet this test of relevancy. They relate not to the question of where the defendants should be tried but to whether the defendants should be tried at all.

 In much the same vein, the defendants claim that their prosecution in this district is unwarranted because they do comparatively little business here. The short answer to this argument is that the extent of the defendants' business activities in other districts in no way alters the fact that the indictment charges offenses which were committed here. The defendants are, in effect, advocating a prosecutive policy which would compel local residents to wait for relief until some United States Attorney in another district saw fit to act. The public interest cannot tolerate such a procedure. To do so, would deny the residents of this district the lawful means to protect themselves from local distributions of obscene materials. It would mark a partial return to the prosecutive limitations which existed under the now discredited decision in United States v. Ross, 205 F.2d 619 (10th Cir. 1963).

The legislative history clearly indicates the intent of Congress in enacting the 1958 amendments to the obscenity statutes. During the course of the Congressional debate on the amendments, Representative Keating explained that:

"The interpretation given by the courts has, to all intents and purposes, nullified previous Congressional action. They have said a promoter can be prosecuted only where he puts the material into the mail. As a result the community most affected by the crime, that is, the one where the stuff is circulated, has no opportunity whatsoever to protect itself.

"The bill before us is intended to overcome the effect of judicial interpretation and thereby to increase materially the effectiveness of the present statute. Its purpose is to make abundantly clear that violators can be prosecuted either at the place of mailing, or at the place of address or delivery, or in any judicial district through which the objectionable matter is carried in the mails."
104 Congressional Record 8043–8044 (1958).

Much of the legislative history is set forth in Judge Starr's opinion in United States v. West Coast News Co., 30 F. R.D. 13 (W.D.Mich.1962). See also, House of Representatives Report No. 1614 (85th Congress, 2d Session), Senate Report No. 1839 (85th Congress, 2d Session); and Conference Report No. 2624 (85th Congress, 2d Session) (To accompany H.R. 6239). The latter two are set out at U.S.Code, Congressional and Administrative News 4012 et seq. (1958).

The strength of this congressional feeling is indicated by Congress' willingness to override the important policy considerations behind Rule 21(b). In the words of the Senate Judiciary Committee:

"The (Senate) bill, as amended, is designed to change section 1461 of Title 18, United States Code, so as to provide for prosecution not only at the place of deposit but also at the place of address or delivery. In this respect it takes a middle ground between the Ross case cited above (which would allow prosecution only at the place of deposit) and section 3237 of title 18, United States Code (which would allow prosecution in any district from, through, or into which the mail matter moves).

"The committee adopts this middle view on the ground that unrestricted 'forum shopping' can lead to abuses and is, therefore, against public policy. Such 'forum shopping' might occur if prosecution could be had not only at the place of mailing of the objectionable matter, but also at the place of address or delivery, or in any judicial district through which such matter is carried. The main evil to be combatted is the harm done to those who are exposed to obscene material at the point of receipt. Action against this pri-

mary evil is provided for in the bill, as amended, by the feature which allows prosecution not only at the place of deposit (as can be done under present law and court decision), but also at the place of address or delivery. Thus the main problem is effectively dealt with while public policy against providing too many forums from which to select is satisfied by the elimination of prosecutions in judicial districts through which the nonmailable material passes between the point of mailing and the place of address or delivery." Senate Report No. 1839, (85th Congress, 2d Session) 2.

It is noteworthy that House bill (H.R. 6239), which did not contain an express limitation on the Government's choice of forum was the one which was finally adopted by the conference committee. Conference Report No. 2624 (85th Congress, 2d Session). These expressions of congressional intent are highly relevant both to the ultimate question of transfer and to the defendants' claim that the prosecution could have more properly been brought in another foreign forum.

If this prosecution were initiated here at the direction of the Department of Justice in Washington rather than at the instance of the local United States Attorney, it may well represent an attempt at forum shopping. However, in the view of Congress, the forum picked by the Government would clearly be a permissible one. Moreover, ordinarily when one speaks of forum shopping it is against the context of a single "multiple district" crime; e. g., United States v. Johnson, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236. In the present case, however, the defendants have made shipments and mailings of the materials named in the pending indictment to all parts of the country. Each of these numerous shipments and mailings could have provided the basis for a separate indictment. The defendants are thus in the position of claiming that the Government took unfair advantage of the nationwide scope of their activities by bringing its prosecution in a district where they had committed comparatively few of their many indictable acts.

Undoubtedly, the defendants could complain of additional hardships no matter in which foreign forum the Government chose to proceed. For present purposes, the only material difference between these foreign forums lies in the degree of added inconvenience which the defendants would encounter in each. The amount of this inconvenience may well be greater here than it would be elsewhere. But this was one of the hazards which the defendants accepted when they chose to send their publications into this district. cf. United States v. Frew, 187 F.Supp. 500, 507 (E.D.Mich. 1960).

Returning to the more immediate issue of whether this prosecution should be transferred to California, the defendants have cited two cases in which venue was transferred to the vicinage in the face of statutes which expressly permitted trial away from the defendant's home. United States v. Johnson, 323 U. S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1940) and United States v. Olen, 183 F.Supp. 212 (S.D.N.Y.1960). The underlying rationale of both these cases is best expressed by the strong dictum of the Supreme Court in United States v. Johnson:

"If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it." 323 U.S. at 276, 65 S.Ct. at 251.

But neither the Supreme Court nor the district court was faced with a situation like the instant one, in which Congress had expressly affirmed the propriety of bringing a prosecution away from the defendant's home district. The present situation is more nearly analogous to the one which existed in United States v. National City Lines, 334 U.S. 573, 68 S. Ct. 1169, 92 L.Ed. 1584. In that case the High Court held that a clear statutory grant of venue by Congress takes

precedence over the discretionary power of a district court to transfer the site of trial.

This is not to suggest that the policy behind the 1958 obscenity amendments renders Rule 21(b) inapplicable in obscenity cases. In a narrow sense, the statutory purpose is given effect when an indictment is returned in the district in which obscene materials have been delivered. More broadly, by affirming the right of a district to protect itself, Congress may have also implied that offenders should be judged by those whom they have harmed. The equity of such a policy requires that the courts exercise judicial restraint in granting Rule 21(b) motions, but it does not require that the courts ignore the legitimate interests of defendants.

In examining the merits of the present motion, this court has fully considered the burdens which the defendants will be required to bear if they are tried in this district. The court concludes that the interest of justice does not warrant a transfer of this prosecution to the Southern District of California.

Accordingly, It Is Hereby Ordered that the motion for transfer of venue is hereby denied.