**UNITED STATES of America,**
**Plaintiff,**

v.

**WEST COAST NEWS COMPANY, Inc., a California Corporation, Sanford E. Aday, Wallace De Ortega Maxey, and Matthew Meehan, Defendants.**

**Crim. A. No. 6615.**

United States District Court
W. D. Michigan, S. D.
Feb. 13, 1962.

Wendell A. Miles (former U. S. Atty.) George E. Hill (present U. S. Atty.) Grand Rapids, Mich., for plaintiff.

Stanley Fleishman, Hollywood, Cal., and Richard F. Vander Veen and George R. Cook, Grand Rapids, Mich., for defendants.

STARR, Senior District Judge.

The defendants were indicted by a grand jury in this district, counts 1 through 6 of the indictment charging that they did knowingly cause the mails to be used for the mailing and carriage in the mails, and did knowingly cause to be delivered by mail, from Fresno, California, to certain places of business in this district certain obscene, lewd, and indecent books in violation of 18 U.S.C. § 1461 and 18 U.S.C. § 2(a); and charging in counts 7 through 19 that the defendants did knowingly cause a common carrier to be used for the carriage in interstate commerce from Fresno, California, to certain places of business in this district certain obscene, lewd, lascivious, and filthy books in violation of 18 U.S.C. § 1462 and 18 U.S.C. § 2(a).

Title 18, U.S.C. § 1461 as amended provides in part:

"Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance;—
* * *

"Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.

"Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section to be nonmailable, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, or knowingly takes any such thing from the mails for the purpose of circulating or disposing thereof,

or of aiding in the circulation or disposition thereof, shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter."

Title 18 U.S.C. § 1462 as amended provides in part:

"Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—

"(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or  *  *  *

"Whoever knowingly takes from such express company or other common carrier any matter or thing the carriage of which is herein made unlawful—

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter."

Title 18 U.S.C. § 3237(a) provides:

"Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

"Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves."

Title 18 U.S.C. § 2(a) as amended provides:

"Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

The defendants have filed a motion in pursuance of rule 21(b) of the Federal Rules of Criminal Procedure, 18 U.S.C., for the transfer of this criminal proceeding from this district to the southern district of California, and they base their motion to transfer on the following grounds:

"That it appears from each of the counts of the indictment herein that the offense was allegedly committed in more than one district, including the aforesaid Southern District of California, Northern Division, and that in the interest of justice; in order to afford each of the defendants a fair trial; in order to avoid deprivation of each of the defendants liberty and property without due process of law and the deprivation of their exercise of the freedoms of speech and of press, under the guarantees of the First, Fifth and Sixth Amendments to the United States Constitution; and to avoid an unconstitutional application of 18 U.S.C. 1461 and 18 U.S.C. 1462 under the aforesaid constitutional provisions, the proceeding should be transferred to the United States District Court for the Southern District of California, Northern Division."

Rule 21(b) of the Federal Rules of Criminal Procedure provides:

"The court upon motion of the defendant shall transfer the proceeding as to him to another district or division if it appears from the in-

dictment or information or from a bill of particulars that the offense was committed in more than one district or division and if the court is satisfied that in the interest of justice the proceeding should be transferred to another district or division in which the commission of the offense is charged."

■ Therefore, under the above rule this court must determine whether "in the interest of justice" this criminal action should be transferred from this district to the southern district of California. The law is well established that the question as to whether a criminal action should be transferred to another district is a matter within the discretion of the court to which the motion is presented. In 11 Cyclopedia of Federal Procedure, 3d ed., §§ 39.150, 39.151, p. 110, it is stated:

"To warrant a transfer under this Rule 21(b), the court must be 'satisfied that in the interest of justice the proceeding should be transferred to another district or division in which the commission of the offense is charged.' Whether transfer is 'in the interest of justice' is a question for the discretion of the court. * * *

"The question as to which district is the more appropriate place for trial is a matter for the discretion of the judge before whom the motion is made."

In 4 Barron and Holtzoff, Federal Practice and Procedure, § 2093, pp. 152, 153, it is stated:

"This subdivision [21(b)] authorizes the court, on motion of the defendant to transfer a case to another district or division in which the commission of the offense is charged, if the court is satisfied that it is in the interest of justice to do so. * * *

"As in the case of transfer under subdivision (a), transfers under this subdivision are likewise addressed to the sound discretion of the court."

In the case of Kott v. United States, 5 Cir., 163 F.2d 984, certiorari denied 333 U.S. 837, 68 S.Ct. 609, 92 L.Ed. 1122 in considering the defendants' motion for transfer of the criminal action from the western district of Louisiana to the southern district of New York, the Court of Appeals said, 163 F.2d at 987:

"The next contention of the appellants is that the case should have been removed to New York under their motion based upon Rule 21(b) of Federal Rules of Criminal Procedure, but a reading of the rule is a sufficient answer to this contention for before a court makes an order for the transfer of a proceeding to another district it must be satisfied that it is 'in the interest of justice' that the proceeding be transferred. We are of the opinion that the rule leaves the question of a transfer of that sort to the discretion of the District Judge, and that merely an erroneous exercise of that discretion will not require a reversal. An abuse of discretion is necessary."

See also Blumenfield v. United States, 8 Cir., 284 F.2d 46, 51, certiorari denied 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed.2d 692; Scott v. United States, 4 Cir., 255 F.2d 18, 20, certiorari denied 357 U.S. 942, 78 S.Ct. 1392, 2 L.Ed.2d 1555; Cottingham v. United States, 6 Cir., 228 F.2d 904, 905; United States v. United States District Court for Eastern District of Tennessee, 6 Cir., 209 F.2d 575, 577; Holdsworth v. United States, 1 Cir., 179 F.2d 933, 937; United States v. Rossiter, D.C., 25 F.R.D. 258, 260; United States v. Kimball Securities, Inc., D.C., 25 F.R.D. 172, 174; United States v. Bryson, D.C., 16 F.R.D. 431, 434.

Many courts have also held that the disposition of a defendant's motion under rule 21(a) for transfer of a criminal action on the ground of prejudice

is likewise a matter within the discretion of the court before whom the motion is made, and that its decision will be reversed only for an abuse of that discretion. See Graham v. United States, 6 Cir., 257 F.2d 724, 729; United States v. Moran, 2 Cir., 236 F.2d 361, 362, certiorari denied 352 U.S. 909, 77 S.Ct. 148, 1 L.Ed.2d 118; Callanan v. United States, 8 Cir., 223 F.2d 171, 177, certiorari denied 350 U.S. 862, 76 S.Ct. 102, 100 L.Ed. 764, rehearing denied 350 U.S. 926, 76 S.Ct. 210, 100 L.Ed. 810; Bianchi v. United States, 8 Cir., 219 F.2d 182, 191, 192, certiorari denied 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249, rehearing denied 349 U.S. 969, 75 S.Ct. 879, 99 L.Ed. 1290; Dennis v. United States, D.C.Cir., 171 F.2d 986, 992, affirmed 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734; Rakes v. United States, 4 Cir., 169 F.2d 739, 746, 747, certiorari denied 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380; Shockley v. United States, 9 Cir., 166 F.2d 704, 709, certiorari denied 334 U.S. 850, 68 S.Ct. 1502, 92 L.Ed. 1773; Kersten v. United States, 10 Cir., 161 F.2d 337, 339, certiorari denied 331 U.S. 851, 67 S.Ct. 1744, 91 L.Ed. 1859; United States v. Parr, D.C., 17 F.R.D. 512, 517.

Rule 21(b) provides for the transfer of a criminal action "if the court is satisfied that in the interest of justice the proceeding should be transferred." In considering the phrase "in the interest of justice," in United States v. National City Lines, D.C., 7 F.R.D. 393, the court said, pp. 397, 398:

"As the new rule (21[b]) is the sole authority for removal from one district to another, its scope must be determined from its language and the considerations which led to its enactment. In lodging the discretion in the trial judge, the Committee gave wide latitude to its exercise by stating that the transfer 'shall be' granted when the judge is satisfied that it is 'in the interest of justice.' There is thus an ele-ment of obligatoriness in the provision ('shall') once a satisfactory showing is made. And the showing is subordinated to the condition that it convince the judge that the transfer is 'in the interest of justice'. * * *

"The phrase 'in the interest of justice,' like the analogous one which occurs often in statutory enactments, 'in the furtherance of justice,' has a broad meaning. It implies conditions which assist, or are in aid of or in the furtherance of, justice. Both call for the doing of things which bring about the type of justice which results when law is correctly applied and administered. They import the exercise of discretion which considers both the interests of the defendant and those of society. When commanded by a statute, they do not attempt to determine, in advance, the type of judicial action to be taken. As said by the Supreme Court in a well-known case (Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520):

" 'The term "discretion" denotes the absence of a hard and fast rule. The Styria v. Morgan, 186 U.S. 1, 9, 22 S.Ct. 731, 46 L.Ed. 1027. When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with a regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.' "

In considering the phrase "in the interest of justice" in rule 21(b) the court in United States v. White, D.C., 95 F.Supp. 544, 550, stated:

"The appraisal of the direction of 'the interest of justice' rests in the mature and reasoned discretion of the court, to be exercised not arbitrarily or capriciously but accord-

ing to recognized judicial standards. The question may not be answered upon the basis of any inflexible and universally applicable rule, but must be resolved in each case upon its peculiar facts and in its own setting, with the mature balancing of the factors pointing in divergent directions. The interests of the government, no less than those of the defendant, must be carefully regarded."

See also United States v. Olen, D.C., 183 F.Supp. 212, 219, 220; United States v. Erie Basin Metal Products Co., D.C., 79 F.Supp. 880, 885, 886.

In considering the defendants' motion for transfer of the present criminal action from this district to the southern district of California, the court should also consider the legislative history of the enactment of 18 U.S.C. §§ 1461, 1462, and 3237(a) to determine the intent of the Congress as to the proper site for criminal prosecutions thereunder. In Report No. 1839 of the United States Senate Committee on the Judiciary, July 15, 1958, pp. 2, 3, in considering the proposed amendments to §§ 1461 and 1462, it is stated:

"The purpose of the bill, as amended, is to make it possible to prosecute violators of section 1461 of title 18 of the United States Code (mailing of obscene or crime-inciting matter) not only at the place at which the objectionable matter is mailed, but also at the place of address or delivery. * * *

"The bill, as amended, is designed to change section 1461 of title 18, United States Code, so as to provide for prosecution not only at the place of deposit but also at the place of address or delivery. In this respect it takes a middle ground between the Ross case United States v. Ross cited above [10 Cir., 205 F. 2d 619] (which would allow prosecution only at the place of deposit) and

section 3237 of title 18, United States Code (which would allow prosecution in any district from, through, or into which the mail matter moves).

"The committee adopts this middle view on the ground that unrestricted 'forum shopping' can lead to abuses and is, therefore, against public policy. Such 'forum shopping' might occur if prosecution could be had not only at the place of mailing of the objectionable matter, but also at the place of address or delivery, or in any judicial district through which such matter is carried. The main evil to be combatted is the harm done to those who are exposed to obscene material at the point of receipt. Action against this primary evil is provided for in the bill, as amended, by the feature which allows prosecution not only at the place of deposit (as can be done under present law and court decision), but also at the place of address or delivery."

See also Report No. 1614, of the House of Representatives Committee on the Judiciary, April 17, 1958, pp. 2, 7.

In the record of the proceedings of the House of Representatives for May 19, 1958, Representative Keating is quoted, Congressional Record, Vol. 104, No. 78, pp. 8043, 8044, as follows:

"The interpretation given by the courts has, to all intents and purposes, nullified previous congressional action. They have said a promoter can be prosecuted only where he puts the material into the mail. As a result the community most affected by the crime, that is, the one where the stuff is circulated, has no opportunity whatsoever to protect itself.

"The bill before us, is intended to overcome the effect of judicial interpretation and thereby to increase materially the effectiveness of the

present statute. Its purpose is to make it abundantly clear that violators can be prosecuted either at the place of mailing, or at the place of address or delivery, or in any judicial district through which the objectionable matter is carried in the mails."

Representative Feighan is quoted at p. 8046 as follows:

"The other main provision in this legislation provides for the prosecution of a violator in the particular area where the violation has its most deleterious and vicious effect, namely, where the obscene material is received from the mail. Under the decision in the Ross case, the violation was complete when this filth was deposited in the United States mails. Upon its receipt by the party to whom it was destined, it could then be disseminated throughout the community undermining morals of juveniles in that area with immunity. Certainly, while the technical crime may have been consummated in a far distant location by the mere deposit of such pornography in the mail, the impact and ramifications of this vicious criminal act were found in the minds and morals of those who were subjected to it upon receipt.

"Permitting the prosecution to take place in the area where the harm is done to public morality, is indeed a constructive step. Who better can judge the effect of such vicious and low activity than the people of the community who have been harmed by the dissemination of such filth. There is nothing for anyone to fear in the enactment of this legislation except those who seek profit from pornography and immorality. Merely to permit the moral, God-fearing members of the community to pass judgment upon purveyors of filth who would destroy the homes of a community and the morals of the juveniles who reside therein, should strike fear in no one's heart other than those who fear justice and the loss of degrading profit in human misery."

It is clear that the Congress in adopting the amendments of §§ 1461 and 1462, in the light of § 3237, intended that persons or corporations charged with the distribution of obscene, lewd, lascivious, indecent, filthy or vile books by use of the mails or by common carrier in interstate commerce, could be prosecuted in the district in which the books were delivered.

■ In considering the standard to be used in determining the question of obscenity of certain material, the Supreme Court in Roth v. United States, 354 U.S. 476, 488, 489, said, 77 S.Ct. 1304, 1311, 1 L.Ed.2d 1498:

"The early leading standard of obscenity allowed material to be judged merely by the effect of an isolated excerpt upon particularly susceptible persons. Regina v. Hicklin, [1868] L.R. 3 Q.B. 360. Some American courts adopted this standard but later decisions have rejected it and substituted this test: *whether to the average person, applying contemporary community standards,* the dominant theme of the material taken as a whole appeals to prurient interest."

Therefore, the question as to whether defendants' books delivered in this district were obscene and in violation of the Federal statutes should be determined on the basis of "contemporary community standards" in this district. As intended by the Congress, a jury drawn from this district will be familiar with and best able to apply the local community standards in determining whether the books were obscene and in violation of the statutes. It is obvious that a jury drawn from the southern district of California would not have knowledge of the community standards

in this western district of Michigan. To grant defendants' motion for a transfer of this criminal action to the southern district of California would deprive the citizens of the western district of Michigan of the opportunity to evaluate the books and determine whether they are obscene under local community standards.

■■■ The defendants admit that this court has jurisdiction of the present criminal action against them. However, they contend that to permit a determination in this judicial district of the question of obscenity and illegality of their books on the basis of local community standards would constitute an unconstitutional application of §§ 1461 and 1462, on the ground that they could be prosecuted by the government in many different States on the basis of different local community standards. The defendants further contend that to permit them to be prosecuted in any judicial district in which they delivered their allegedly obscene books, on the basis of local community standards of obscenity, would render §§ 1461 and 1462 unconstitutional for vagueness and indefiniteness. These contentions are wholly without merit. In United States v. Oakley, 6 Cir., 290 F.2d 517, 518, certiorari denied 368 U.S. 888, 82 S.Ct. 139, 7 L.Ed.2d 87, Judge O'Sullivan of the Court of Appeals for this judicial circuit said:

"Prior to the amendment, the relevant language of Section 1461 read, 'Whoever knowingly deposits for mailing or delivery, anything declared by this section to be non-mailable,' etc. This was changed by the 1958 amendment to read, 'Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section to be non-mailable, *or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered*

by the person to whom it is addressed,' etc.

"Appellant says that the italicized portion of the above 'is not only vague and indefinite, it is meaningless,' and, therefore, offensive to the Fifth and Sixth Amendments. The indictment averring an offense committed after the 1958 amendment, charged that on November 22, 1958, appellant 'did knowingly cause to be delivered by mail, according to the directions thereon' an obscene picture, giving the name and address of the person to whom it was alleged to have been delivered. We are satisfied that appellant was thereby clearly informed of the offense with which he was charged, and that the statute whose language was thus employed was not infected with any constitutional infirmity. United States v. Petrillo, 332 U.S. 1, 7, 8, 67 S.Ct. 1538, 91 L.Ed. 1877; Collier v. United States, 4 Cir., 1960, 283 F.2d 780, 781, certiorari denied 365 U.S. 833, 81 S.Ct. 746, 5 L.Ed. 2d 744.

See also United States v. Collier, D.C., 183 F.Supp. 47, 48, affirmed 4 Cir., 283 F.2d 780, certiorari denied 365 U.S. 833, 81 S.Ct. 746, 5 L.Ed.2d 744.

In United States v. Frew, D.C., 187 F.Supp. 500, 507, the court said:

"The constitutionality of the statute involved here, (Section 1461, Title 18 U.S.C.) was sustained by the United States Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. Citation of that authority is sufficient answer to defendants' contention on this question. However, defendants here assert that a 1958 amendment to that section which permits prosecution at the place of delivery as well as at the place of depositing the mail, and for carriage in the mails, makes the holding in Roth v. United States inap-

plicable. They contend that because, as they claim, under the amendment a publisher would be required to know the community standards of each state through which and into which the mail is sent, an undue burden is cast upon their right of free speech and they are deprived of due process. The first answer to this position is that the case before us is not one involving prosecution in a state through which allegedly obscene material was conveyed by mail. These defendants are not being prosecuted for sending mail through some state, but because they caused to be delivered here in Michigan allegedly offending material. The courts will not consider a challenge to the constitutionality of a statute as it might apply to some hypothetical situation. Virginian Ry. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Blackmer v. United States, 284 U.S. 421–442, 52 S.Ct. 252, 76 L.Ed. 375; Jeffrey Mfg. Co. v. Blagg, 235 U.S. 571–576, 35 S.Ct. 167, 59 L.Ed. 364.

"If a prosecution is one day attempted against publishers such as these defendants in a state through which the mail was transported, it will be time enough to ' consider whether any constitutional rights of the mailers are offended. United States v. Wurzbach, 280 U.S. 396, 399, 50 S.Ct. 167, 74 L.Ed. 508; Yazoo & Mississippi Valley R. R. Co. v. Jackson Vinegar Co., 226 U.S. 217, 219, 33 S.Ct. 40, 57 L.Ed. 193.

"Defendants also assert that because in their business they transmit their materials throughout the entire United States, it would be placing an undue burden upon them to be required to know in advance the community standards of each locality into which they propose to send their material. One who chooses to carry on an enterprise which might indeed offend criminal statutes enforceable in places in which he proposes to carry on his enterprise, must take the hazards involved. United States v. Wurzbach, supra. It is not the duty of the courts in enforcing the law or of Congress in enacting statutes to advise in advance the likely reaction of juries in each community in which an individual chooses to carry on his activities.

" ' * * * The law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death.' Nash v. United States, 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232."

In Toscano v. Olesen, D.C., 184 F.Supp. 296, 297, Judge Yankwich said:

"An Indictment for violation of § 1461 of the United States Penal Code (18 U.S.C. § 1461) was returned against the plaintiff on April 22, 1960, in the United States District Court for the Northern District of Texas, Dallas Division. Six counts of mailing unmailable matter were contained in the Indictment, alleging mailings at Los Angeles to different persons in the Texas district. This was done under the 1958 amendment to the section which allows prosecutions either in the district of mailing or the district of delivery. The object of this statute is 'to make it possible to prosecute violators of section 1461 of title 18 of the United States Code (mailing of obscene or crime-inciting matter) *not only at the place at which the objectionable matter is mailed, but also at the place of address or delivery.*' (Senate Report No. 1839, U.S.Code Congressional and Administrative News, 1958, Vol. 2 p. 4012.) * * *

"As the Congress has clearly and constitutionally expressed the intent to consider mailing of obscene matter a partly continuous offense by allowing prosecution at either end, we need not concern ourselves with the possible hardship resulting from the exercise of this power. For that *affects policy. Our function is merely to give effect to it.*"

In Roth v. United States, supra, in considering the defendants' contention that the Federal obscenity statute, § 1461, was unconstitutional, the court held that neither the statute nor its application under various contemporary local community standards was unconstitutional. The court said, 354 U.S. at pages 488–492, 77 S.Ct. at page 1311:

"The early leading standard of obscenity allowed material to be judged merely by the effect of an isolated excerpt upon particularly susceptible persons. Regina v. Hicklin, [1868] L.R. 3 Q.B. 360. Some American courts adopted this standard but later decisions have rejected it and substituted this test: whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest. The Hicklin test, judging obscenity by the effect of isolated passages upon the most susceptible persons, might well encompass material legitimately treating with sex, and so it must be rejected as unconstitutionally restrictive of the freedoms of speech and press. On the other hand, the substituted standard provides safeguards adequate to withstand the charge of constitutional infirmity. * * *

"It is argued that the statutes do not provide reasonably ascertainable standards of guilt and therefore violate the constitutional requirements of due process. Winters v. People of State of New York, 333 U.S. 507 [68 S.Ct. 665, 92 L.Ed. 840]. The federal obscenity statute makes punishable the mailing of material that is 'obscene, lewd, lascivious, or filthy * * * or other publication of an indecent character.' * * * The thrust of the argument is that these words are not sufficiently precise because they do not mean the same thing to all people, all the time, everywhere.

"Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. ' * * * [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * *.' United States v. Petrillo, 332 U.S. 1, 7–8 [67 S.Ct. 1538, 1542, 91 L.Ed. 1877]. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark ' * * * boundaries sufficiently distinct for judges and juries fairly to administer the law * * *. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense * * *.' Id., [332 U.S. at page] 7. See also United States v. Harriss, 347 U.S. 612, 624, note 15 [74 S.Ct. 808, 98 L.Ed. 989]; Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340 [72 S.Ct. 329, 330, 96 L.Ed. 367]; United States v. Ragen, 314 U.S. 513, 523–524 [62 S.Ct. 374, 378, 86 L.Ed. 383]; United States v. Wurzbach, 280 U.S. 396 [50 S.Ct. 167, 75 L.Ed. 508]; Hygrade Provision Co. v.

Sherman, 266 U.S. 497 [45 S.Ct. 141, 69 L.Ed. 402]; Fox v. State of Washington, 236 U.S. 273 [35 S.Ct. 383, 59 L.Ed. 573]; Nash v. United States, 229 U.S. 373 [33 S.Ct. 780, 57 L.Ed. 1232].

"In summary, then, we hold that these statutes, applied according to the proper standard for judging obscenity, do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited."

In support of their contention that failure to grant their motion to transfer the present criminal action to the southern district of California would render the obscenity statutes, §§ 1461 and 1462, unconstitutional, defendants cite Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205. However, study of the Smith case clearly indicates that it does not sustain defendants' contention. In that case the appellant was charged with an offense which was defined by the trial court as "consisting solely of the possession, in the appellant's bookstore, of a certain book found upon judicial investigation to be obscene." The Supreme Court said, 361 U.S. at pages 149–153, 80 S.Ct. at page 216:

"The definition included no element of scienter—knowledge by appellant of the contents of the book —and thus the ordinance was construed as imposing a 'strict' or 'absolute' criminal liability. The appellant made timely objection below that if the ordinance were so construed it would be in conflict with the Constitution of the United States. * * *

"But the question here is as to the validity of this ordinance's elimination of the scienter requirement—an elimination which may tend to work a substantial restriction on the freedom of speech and of the press. * * *

"We have held that obscene speech and writings are not protected by the constitutional guarantees of freedom of speech and the press. Roth v. United States, 354 U.S. 476 [77 S.Ct. 1304, 1 L.Ed.2d 1498]. The ordinance here in question, to be sure, only imposes criminal sanctions on a bookseller if in fact there is to be found in his shop an obscene book. But our holding in Roth does not recognize any state power to restrict the dissemination of books which are not obscene; and we think this ordinance's strict liability feature would tend seriously to have that effect, by penalizing booksellers, even though they had not the slightest notice of the character of the books they sold. * * * By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public's access to constitutionally protected matter. For if the bookseller is criminally liable without knowledge of the contents, and the ordinance fulfills its purpose, he will tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature."

The foregoing decision determines only that the elimination of the requirement of knowledge works a restriction on the freedom of speech and the press. Both §§ 1461 and 1462 contain a requirement of knowledge as part of the offense, and therefore neither section could be considered unconstitutional under the holding in the Smith case. Furthermore, in the Smith case the court did not consider the constitutional effect of multiple prosecutions in various districts for deliveries of identical materials, and therefore the decision in that case does not support defendants' claim in the present

action that such prosecutions would render the statutes unconstitutional.

In the Roth case, supra, 354 U.S. at pages 491, 492, 77 S.Ct. 1304, the court held that the occurrence of various prosecutions under varying contemporary community standards would not render § 1461 unconstitutional. Applying the holding in the Roth case, this court concludes that a denial of defendants' motion to transfer this action to the southern district of California would not render §§ 1461 and 1462 unconstitutional.

The principal question that will be presented in the trial of this criminal action is whether, applying the "contemporary community standards" of this district, the defendants' books were obscene, lewd, lascivious, indecent, filthy or vile within the meaning of §§ 1461 and 1462. It is obvious that any damage to society resulting from the delivery and distribution of defendants' allegedly obscene books would be in this district, in which they were delivered and distributed. Section 3237(a) expressly provides that any offense involving use of the mails or transportation in interstate commerce is a continuing offense and can be prosecuted in any district into which the commerce or mail matter moves.

▆▆▆ Under rule 21(b) the court must determine whether "in the interest of justice" this criminal action should be transferred from this district, where it was begun, to the southern district of California. The convenience of witnesses and the expense involved may properly be considered in determining this question. See United States v. Olen, D.C., 183 F.Supp. 212, 219. The individual defendants and the corporate defendant are located in California. Undoubtedly the individual defendants and other witnesses from California would testify in the trial of this action, and if the trial were held in this district, they would be obliged to travel from California. On the other hand, if this action were transferred, the government's witnesses would be required to travel from this district to California. It is obvious that no district will be convenient for all of the witnesses in this action.

Considering the intent of the Congress in the enactment of §§ 1461, 1462, and 3237(a) and considering the matter of convenience of witnesses, the court is convinced that the transfer of this action to the southern district of California would not be "in the interest of justice" and that the defendants' motion to transfer should be denied.

For the reasons herein stated an order will be entered denying the defendants' motion to transfer this criminal action from this district to the southern district of California.