**REED ENTERPRISES et al., Plaintiffs,**

**v.**

**Ramsey CLARK et al., Defendants.**

**Civ. Nos. 1744–65, 2562–65 and 3009–65.**

United States District Court
District of Columbia.

Oct. 26, 1967.

Judgment Affirmed March 25, 1968.
See 88 S.Ct. 1196.

David Rein, Washington, D. C., for plaintiffs.

Fred M. Vinson, Jr., Asst. Atty. Gen., C. Westbrook Murphy, Dept. of Justice, Theodore Kleinman, Department of Justice, David G. Bress, U. S. Atty., of counsel, for defendants.

## OPINION ·

Before TAMM, Circuit Judge, and SIRICA and CORCORAN, District Judges.

CORCORAN, District Judge.

The above numbered actions were consolidated since they raise identical constitutional issues for decision by a three-judge panel convened pursuant to 28 U. S.C. §§ 2282–2284.

In each case the plaintiffs originally sought the convocation of a three-judge court to secure injunctive and declaratory relief on grounds that a 1958 amendment to the venue provisions of the Federal Obscenity Statutes violated their constitutional rights.

In each instance the District Judge to whom application for a three-judge court was made denied the application on jurisdictional grounds. The convocation of this three-judge court followed successful appeals by the petitioners to the Court of Appeals. See Reed Enterprises v. Corcoran (Luros v. Sirica), 122 U.S. App.D.C. 387, 354 F.2d 519 (1965).

The precise issue before the Court is the constitutionality of the venue provision of the Federal Obscenity Statutes [1] as amended in 1958.[2]

## I.

## BACKGROUND

Title 18 § 1461 defines as nonmailable:

"Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance; * * *"

Prior to 1958 it further provided:

"Whoever knowingly *deposits for mailing or delivery*, anything declared by

this section to be nonmailable * * shall be fined not more than $5,000 or imprisoned not more than five years, or both." (Emphasis added).

In 1958 for reasons hereinafter recited[3] the immediately foregoing language of § 1461 was amended by deleting "deposits for mailing or delivery" and substituting the phrase "uses the mails" so that the statute now reads in pertinent part:

"Whoever knowingly *uses the mails* for the mailing, carriage in the mails, or delivery of anything declared by this section to be nonmailable * * *." (Emphasis added).

shall be guilty of a violation of the statute.

The intended effect of the 1958 amendment was to place the venue for obscenity prosecution within the purview of Title 18 U.S.C. § 3237 which read:

"Any offense involving the *use of the mails*, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted *in any district from, through, or into which such commerce or mail matter moves*." (Emphasis added).

thus making the use of the mails for the dissemination of obscene matter a continuing offense from the time of deposit to the time of delivery and throughout transit.

The plaintiffs are distributors and publishers of books and magazines which, when considered in the light of the obscenity statute, have been characterized as "borderline or marginal material."[4]

1. 18 U.S.C. §§ 1461 and 1462 (1964). While § 1461 (mailing obscene or crime-inciting matter) is of primary concern and will be treated exclusively herein, § 1462 (importation or transportation of obscene matter) is also under attack by plaintiffs. However, because of the similarity of venue provisions any disposition concerning § 1461 will of necessity reflect upon the constitutional status of § 1462.

2. Pub.L. 85–796, 72 Stat. 962.

3. Pages 11–14, infra.

4. So characterized by plaintiffs' counsel during hearing on motion for summary judgment. See also stipulation of facts filed herein listing the several indictments and demonstrating the common theme which the material involved seeks to portray.

In their original complaint for injunctive and declaratory relief they allege substantially that through application of the foregoing statutory provisions the representatives of the United States intend to and will commence and prosecute various criminal actions in District Courts throughout the United States; that such actions will necessarily involve plaintiffs in a multiplicity of legal proceedings and involve and threaten them with the destruction of their goodwill and property; that such actions will exhaust their financial and physical resources and thus make it impossible for plaintiffs to adequately defend against the aforesaid multiple criminal prosecutions; that such conduct will seriously diminish the circulation of plaintiffs' books and writings; and that accordingly plaintiffs will suffer substantial and irreparable loss and damage for which plaintiffs have no adequate remedy at law. Further the plaintiffs contend that the 1958 amendment, specifically incorporating a continuous offense doctrine of venue, permits arbitrary forum shopping by Federal prosecutors and the institution of multiple prosecutions for identical material in districts far removed from the residences and places of business of alleged violators. Such permissive forum shopping, it is claimed, constitutes an unlawful interference with and an abridgement and denial of the freedom of the press, in violation of the First Amendment; it deprives persons, including these plaintiffs of their liberty and property without due process of law, in violation of the Fifth Amendment; and finally it deprives persons of their right to a fair trial in a criminal prosecution guaranteed by the provisions of the Sixth Amendment.[5]

Subsequent to convening this special court the parties stipulated to the pertinent facts underlying this dispute and a hearing was held at which oral argument was presented on cross motions for summary judgment and an alternative motion to dismiss for lack of jurisdiction pressed by the defendant.

In support of their motion for summary judgment the plaintiffs substantially narrowed the constitutional issue before the Court to whether the provisions of 18 U.S.C. §§ 1461 and 1462 as amended in 1958 are unconstitutional on their face.

The reason for this position is clear. The plaintiffs can allege only a *potential* threat of prosecution in multiple districts and a *potential* objective of depriving them of their constitutional rights where no such activity is shown to exist now nor to have existed in the past since the 1958 amendment. This conclusion is borne out by the stipulated facts which show a total of seven corporations and fifteen individuals, parties plaintiff; and that since 1958 such plaintiffs have been subjected to only four criminal trials under the Federal Obscenity Statute. One case was prosecuted in the home state of the defendant; another originated in Houston, Texas, but was later removed to California,[6] the domicile of the defendant; a third case was conducted in Fort Dodge, Iowa; and the fourth case was tried in Grand Rapids, Michigan in May 1960. On motion by the accused in the Grand Rapids case for a change of venue the District Court upheld the constitutionality of 18 U.S.C. §§ 1461 and 1462.[7] A verdict of guilty and the District Court's ruling on venue were sustained by the Sixth Circuit Court of Appeals.[8]

5. Reed Enterprises v. Corcoran, 122 U.S. App.D.C. 387, 354 F.2d 519, 520 (1965).

6. Following a deadlocked jury in the Houston trial the case was removed to a California District pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure.

7. United States v. West Coast News Company, 30 F.R.D. 13 (D.C.W.D.Mich. 1962).

8. United States v. West Coast News Company, 357 F.2d 855 (6th Cir. 1966). Subsequently reversed on other grounds, sub nom. Aday, et al. v. United States, 388 U.S. 447, 87 S.Ct. 2095, 18 L.Ed.2d 1309 (1967). On this same day the Supreme Court granted certiorari and summarily reversed twelve other obscenity cases which were pending before it by mere reference to Redrup v. New York, 386

No criminal case involving these plaintiffs (or others) has been brought in this District in the past and no case involving these plaintiffs (or others) is now pending before this or any other court in this District.[9]

■ This historical record would seemingly justify a court in refusing to consider a challenge to the constitutionality of a statute as it might apply to a hypothetical situation. Virginian Ry. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937); Blackmer v. United States, 284 U.S. 421, 442, 52 S.Ct. 252, 76 L.Ed. 375 (1932); Jeffrey Mfg. Co. v. Blagg, 235 U.S. 571, 576, 35 S.Ct. 167, 59 L.Ed. 364 (1914).[10]

This traditional concept of justiciability, however, must be subordinated in reaching the merits of the case under the developing standards of prior restraints upon First Amendment rights. See Speiser v. Randall, 357 U.S. 513, 78 S. Ct. 1332, 2 L.Ed.2d 1460 (1958); Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Reed Enterprises v. Corcoran, supra.

## II.

## THE CONSTITUTIONAL ASPECTS OF VENUE

■■ It should be initially noted that the Federal Obscenity Statutes with which we are here concerned are founded on the power of Congress to exclude objectionable and non-constitutionally protected material from the mails. That Congress has the power to regulate the mails is well established, Public Clearing House v. Coyne, 194 U.S. 497, 24 S.Ct.

789, 48 L.Ed. 1092 (1904). It is likewise well established that obscene, lewd, lascivious, etc. material is not constitutionally protected by the First Amendment, or any other constitutional safeguard. See Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 969, 16 L.Ed.2d 31 (1966).

We approach the specific problem with those general concepts in mind.

Article III, § 2, Clause 3 of the Constitution reads in pertinent part:

> "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; * * *."

The Sixth Amendment to the Constitution similarly provides:

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, * * *."

■ Neither the Constitution nor any principle of constitutional law entitles an accused to be tried in the place of his residence or domicile. If a crime has been committed against the United States the Constitution only requires that trial be conducted in a district where the crime was committed. Haas v. Henkel, 216 U.S. 462, 473–474, 30 S.Ct. 249, 54 L.Ed. 569 (1910).

Most Federal crimes involve some aspect of interstate or foreign commerce and usually involve multiple state or district contacts. The Federal offense may be committed partly in one state and com-

U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967). In *Redrup* the Supreme Court reviewed the diversity of opinion prevailing among members of the Court as to what constitutes unprotected expression but found that no matter what test was applied the material before the Court was constitutionally protected.

9. This was one of the jurisdictional grounds upon which the convening of a three-judge panel was originally denied.

10. See references in similar context in United States v. Frew, 187 F.Supp. 500 at 507 (D.C.E.D.Mich., 1960) and United States v. Wurzbach, 280 U.S. 396, 399, 50 S.Ct. 167, 74 L.Ed. 508 (1930).

pleted in another, or it may be what is denominated a continuing offense, such as an offense involving the unauthorized use of the mails or otherwise transporting prohibited goods in interstate commerce.

Congress must accordingly determine where venue will lie for purposes of Federal jurisdiction under any given statute.[11] Silence on the part of Congress in any instance would only lead to chaos.

Thus in the enactment of the Elkins Act, 49 U.S.C. §§ 41–43 (1964), prohibiting transportation of goods in interstate commerce at rates less than those prescribed by regulated tariffs, Congress saw fit to include a venue provision to the effect that prosecution could be had in any district "in which such violation was committed or through which the transportation may have been conducted." The Supreme Court specifically upheld the concept of the continuing offense as a basis for determining venue (Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681 (1908).[12] The Court commented (at p. 74, 28 S.Ct. at p. 432) that "[W]hen it [the violation] takes place, whether in one district or another, whether at the beginning, at the end, or in the middle of the journey, *it is equally and at all times committed.*" (Emphasis added).

The Court met head-on the objection of alleged serious hardship implicit in prosecutions in places distant from the home and remote from the vicinage of the accused by characterizing it as an "objection to the policy of the law, not the power of Congress to pass it. Hyde v. Shine, 199 U.S. 62, 78, 50 L.Ed. 90, 95, 25 Sup. Ct.Rep. 760." Armour Packing Co. v. United States, Id. at 77, 28 S.Ct. at 433.

But while the Supreme Court, in line with *Armour,* has not attacked the constitutional power of Congress to use the continuing offense concept, it has required a showing of a clear Congressional intent prior to applying the concept and has otherwise limited the choice of venue.

Thus in United States v. Johnson, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1944) the Court was called upon to construe the venue provision of the Federal Denture Act, 18 U.S.C. § 1821 (1964) which provided for prosecution for "sending" dentures through the mail. The Court seized upon what it considered the absence of a clear intent and restricted venue to the point where the dentures were actually deposited in the mail notwithstanding the existence of a general venue statute which would have permitted prosecution in another jurisdiction.

The holding of the Court in United States v. Johnson has been attributed to the distaste felt for the continuing offense concept; " * * * the Court was straining to find ambiguity in this particular statute * * *" 115 U. Pa.L.Rev. 399 at 418 (1967). But for all such distaste the Court never disputed the power of Congress to provide specifically for venue, stating, at page 275, 65 S.Ct. at page 250;

> "By utilizing the doctrine of a continuing offense, Congress may, to be sure, provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates. *Thus, an illegal use of the mails or of other instruments of commerce may subject the user to prosecution in the district where he sent the goods, or in the district of their arrival, or in any intervening district.*" (Emphasis added).

■ Because of possible hardship which such leeway engenders, leading to

---

11. "The problem of laying and justifying venue in such cases has been severe and recurring." Comment—Multi-Venue and the Obscenity Statutes, 115 U.Pa.L.Rev. 399 (1967), citing Abrams, Conspiracy and Multi-Venue in Federal Criminal Prosecutions: The Crime Committed Formula, 9 U.C.L.A.L.Rev. 751 (1962).

12. This case also involved the most extreme aspects of this concept in terms of traditional notions of fair play and substantial justice—that of the intervening district venue.

"appearance of abuses, if not to actual abuses, in the selection of what may be deemed a tribunal favorable to the prosecution" the Court required in *Johnson* and subsequent cases [13] a clear Congressional mandate. In *Johnson* Justice Frankfurter, speaking for the Court, recognized that such venue questions must be regarded as more than mere procedural matters and raise deep issues of policy considerations which "touch closely the fair administration of criminal justice and public confidence in it, on which it ultimately rests." United States v. Johnson, supra, 323 U.S. at 276, 65 S.Ct. at 250. Accord, Travis v. United States, 364 U.S. 631, 81 S.Ct. 358, 5 L. Ed.2d 340 (1961).

Following the *Johnson* decision, and having in mind the judicial restriction of clear intent there announced, Congress responded in 1948 by amending 18 U.S.C. § 3237 to read as quoted on page 374.

 The amendment was intended to remove all doubt as to the venue of continuing offenses and make a special venue provision unnecessary except in those cases where Congress wished to restrict the prosecution of offenses to a particular district. Offenses involving use of the mails and transportation in interstate commerce were clearly designated as continuing offenses.[14]

Notwithstanding the 1948 amendments, which seemingly resolved all ambiguity in cases involving use of the mails, the Tenth Circuit in 1953 in the case of United States v. Ross, 205 F.2d 619 (1953) refused to apply the continuing venue concept to language in the then obscenity statute which proscribed the "knowing deposit for mailing or delivery of nonmailable material."

*Ross* held in effect that "deposit" was the key word in the obscenity statute which precluded the application of the continuing offense doctrine.

The practical result of *Ross* was that prosecution of Federal obscenity cases was thereafter largely confined to the major publishing centers of Los Angeles and New York. The character of material shipped country-wide was being determined in those allegedly liberal jurisdictions with attendant difficulties to successful prosecution. Comment, Venue: Impact on Obscenity, 11 So.D.L.Rev. 363 (1966) relying upon Lockhart and McClure, Censorship of Obscenity: The Development of Constitutional Standards, 45 Minn.L.Rev. 5, 36 (1960); see also Senate Report No. 1839, 85th Cong., 3 (1958), U.S.Code Cong. & Admin. News 1958, p. 4012.[15]

The *Ross* roadblock to successful prosecution of obscenity cases led Congress to enact the 1958 amendments to the Obscenity Statute. The legislative history of those amendments leaves no doubt that what Congress was trying to do was to supply the specificity of intent required

13. United States v. Anderson, 328 U.S. 699, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946). Where Congress is not explicit "the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." at 703, 66 S.Ct. at 1216; accord, Travis v. United States, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961). But where Congressional intent is specific, matters of possible hardship of trial away from the vicinage of the accused "neither allows nor requires judicial changes in the law of venue." Johnston v. United States, 351 U.S. 215, 76 S.Ct. 739, 100 L.Ed. 1097 (1956).

14. See notes following 18 U.S.C. § 3237 (1964), citing 80th Congress House Report No. 304.

15. These problems were presented to the Congress during Hearings on Mailing of Obscene Matter before Subcommittee No. 1 of the House Committee on the Judiciary, 85th Cong., 2d Sess. 8 (1958) in the following terms:

"Difficulties in prosecuting violators resulting from liberal attitudes of courts and juries—particularly in certain metropolitan areas, notably Los Angeles and New York—have established virtual sanctuaries allowing dealers in publications devoted exclusively to distorted sex to operate in defiance of the Post Office Department's best effort to bar their use of the mails or bring them to justice."

by the *Johnson* case and to avoid the impact of the *Ross* case.[16]

The House of Representatives initially passed a bill which provided for continuing offense language requested by the Post Office Department (House Report No. 2624). The Senate Bill limited prosecution to the place of deposit and place of receipt.[17] (Senate Report No. 1839, 85th Cong., 2d Sess. 3 (1958)). The disagreement was resolved in Conference where the House version was adopted.

The Conference Report contained the following summary:

"It is the position of the Post Office Department that the crime of sending obscene matter through the mails is a *continuing crime* from the point of deposit, in transit, and at the point of delivery. The House concurred in the position of the Post Office Department. However, it appears that the Senate amendment of the venue provision would destroy the nature of the continuing offense. Furthermore, the striking out of the provision for the prosecution of the offense in the jurisdiction through which the obscene matter passes is contrary to the intent of Congress as expressed by the law in section 3237 of title 18, United States Code." (Emphasis in original). Statement of the Managers on the part of the House accompanying H.R. 6239 (House Report No. 2624 at page 3, 85th Cong., 2d Sess. (1958)), U.S.Code Cong. & Admin.News 1958, p. 4017.

More pointedly, it was said in debate:[18]

"The interpretation given by the courts has, to all intents and purposes, nullified previous congressional action. They have said a promoter can be prosecuted only where he puts the material into the mail. As a result the community most affected by the crime, that is, the one where the stuff is circulated, has no opportunity whatsoever to protect itself.

"The bill before us, is intended to overcome the effect of judicial interpretation and thereby to increase materially the effectiveness of the present statute. Its purpose is to make it abundantly clear that violators can be prosecuted either at the place of mailing, or at the place of address or delivery, or in any judicial district through which the objectionable matter is carried in the mails.

\* \* \* \* \* \*

"There is nothing for anyone to fear in the enactment of this legislation except those who seek profit from pornography and immorality. Merely to permit the moral, God-fearing members of the community to pass judgment upon purveyors of filth who would destroy the homes of a community and the morals of the juveniles who reside therein, should strike fear in no one's heart other than those who fear justice and the loss of degrading profit in human misery."

From the foregoing it can readily be seen that the concept of continuing offense is not an innovation; rather it is an aged concept which has been upheld by the Supreme Court in several cases. It is undisputed that the Congress, having the power to control the use of the mails, has unequivocally manifested its intent that obscene material be excluded from the mail and other agencies of interstate commerce. And, while the Supreme Court has noted issues of public policy, possible hardship and burden[19]

---

16. See summary of legislative history in United States v. West Coast News Co., D.C., 30 F.R.D. 13 at 18–19 (1962).

17. The Senate originally took what it considered the "middle view" between *Ross* and the House passed bill on the ground that it considered that unrestricted "forum shopping" could lead to abuses and is therefore against public policy. But even

the Senate recognized the need for expansion of venue and was initially willing to authorize limited "forum shopping."

18. Congressional Record, Vol. 104, No. 78, pp. 8043–8046, May 19, 1958.

19. The plaintiffs' allegations of hardship must also be considered in light of the availability of an effective remedy in

in considering questions of venue, it has never questioned the power of Congress to designate proscribed offenses as continuing offenses by regulation of the use of agencies of interstate commerce.[20]

While these concepts of venue as developed have been criticized, even critics have conceded that "the continuing offense concept has become securely engrained in the administration of federal criminal law and the constitutionality of the concept itself, as opposed to its application in a particular area of criminal law, would appear to be no longer open to attack." 115 U.Pa.L.Rev. 399 at 423 (relying in substantial part on Abrams, Conspiracy and Multi-Venue in Federal Criminal Prosecutions: The Crime Committed Formula, 9 U.C.L.A. L.Rev. 751 at 816).

■ On the basis of the foregoing this Court must conclude (as has every court which has had occasion to consider the question similarly concluded)[21] that the use of the mails for transporting obscene material clearly constitutes an activity which Congress may constitutionally designate a continuing offense and that such designation does not violate the Sixth Amendment venue provision of the Constitution.[22]

### III.

### PRIOR RESTRAINT AND DUE PROCESS

We consider now the plaintiffs' contentions that the venue provisions constitute a "prior restraint" upon freedom of expression in violation of the First Amendment as well as violating the due process requirements of the Fifth Amendment. The substance of the plaintiffs' claim is that the existence and potential use of the power to select venue in criminal obscenity prosecutions has an *in terrorem* effect which may intimidate people from exercising First Amendment rights, thus depriving the public of access to protected publications. More particularly the plaintiffs argue that it is difficult at best to defend in the field of obscenity where the standards and concepts are vague, but when additionally a publisher or distributor of publications is required to meet not only the economic challenge of defense away from home, but as well the uncertainty that is implicit when juries in varying jurisdictions are required to define what is obscene, the combination of burdens and vagueness necessarily results in an unconstitutional restraint upon the activities of the publishers or distributors. This combination of factors, it is urged, could well induce a person to engage in self-censorship and thus restrict the public's access to protected publications.

The strict standards by which statutes affecting First Amendment rights must be measured have been set forth in numerous cases decided by the Supreme Court within the last ten years, many of which are relied upon by the plaintiffs to

Rule 21(b) of the Federal Rules of Criminal Procedure. This rule was designed specifically for the purpose of alleviating unnecessary hardship and provides for a change of venue when in the discretion of the judge such a change would be in the interests of justice.

20. As stated by Mr. Justice Douglas speaking for the majority in Travis v. United States: "The use of agencies of interstate commerce enables Congress to place venue in any district where the particular agency was used." 364 U.S. 631 at 634, 81 S.Ct. 358, at 360, 5 L.Ed.2d 340 (1961).

21. United States v. West Coast News Co., supra, reversed on other grounds, Aday

v. United States, 388 U.S. 447, 87 S.Ct. 2095, 18 L.Ed.2d 1309 (1967); United States v. Luros, 243 F.Supp. 160, 167–168; United States v. Frew, 187 F.Supp. 500 (E.D.Mich.1960); Toscano v. Olesen, 184 F.Supp. 296 (S.D.Calif.1960). See also United States v. Sorce, 308 F.2d 299 (4th Cir. 1962) where the court sustained a similar venue provision of the Mail Fraud statute (18 U.S.C. § 1341).

22. The Court finds no necessity to bolster this conclusion by reference to affidavits, submitted by the Government, that it is the stated policy of the incumbent Attorney General not to invoke *in transitu* jurisdiction. Constitutional considerations need a more solid basis than variable policy.

sustain their position.[23] And it is apparent from some of those cases that the Supreme Court, when confronted with statutes regulating expression and involving possible imponderables that may inhibit the full exercise of First Amendment freedoms, has relaxed some of the procedural prerequisites to the assumption of jurisdiction. Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). Under certain limited conditions the mere threat of criminal prosecution or other sanctions by the Government without necessary safeguards for exercise of a First Amendment freedom has been sufficient to justify court intervention especially when the statute has presented a potential "chilling effect" on protected expression. NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), Bantam Books Inc. v. Sullivan, 372 U.S. 58 (1963). See also Reed v. Corcoran, supra.

However, rights guaranteed by the First Amendment like all individual rights, are not absolute and all legislative enactments which touch upon First Amendment rights or have some ancillary effect upon free expression need not be and have not been declared unconstitutionally void. This is especially true, as the Supreme Court noted in Speiser v. Randall, where there is "no attempt directly to control speech but rather to protect, from an evil shown to be grave, some interest clearly within the sphere of governmental concern." 357 U.S. at 527, 78 S.Ct. at 1343. See also United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). This principle was relied upon in Roth v. United States, 354 U.S. 476 at 484, 77 S.Ct. 1304, at 1309,

1 L.Ed.2d 1498 (1957), when the Court stated:

"All ideas having even the slightest redeeming social importance—unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion—have the full protection of the guaranties, *unless excludable because they encroach upon the limited area of more important interests*." (Emphasis added).

This Court, of course, must closely and carefully scrutinize procedural safeguards especially "[W]hen we deal with the complex of strands in the web of freedoms which make up free speech." (Speiser v. Randall, 357 U.S. 513, 520–526, 78 S.Ct. 1332, 1339 (1958). It is fully cognizant of the fact that it is dealing with a limited and uncertain area of permissible Government activity and that the Government "is not free to adopt whatever procedures it pleases for dealing with obscenity * * without regard to the possible consequences for constitutionally protected speech." Marcus v. Search Warrant, 367 U.S. 717–731, 81 S.Ct. 1708–1716, 6 L.Ed.2d 1127 (1961).

However, while many of the cases cited by plaintiffs provide some guidance in the application of a constitutional standard, of themselves they are not controlling in the disposition of the present case.

In the first place we are not confronted here with any direct "prior restraint" upon free speech or any procedure restraining dissemination of materials prior to a judicial determination of their constitutional status. The application of the venue statute obviously occurs only after dissemination. And as to the indirect threat of prosecution which is implicit in any criminal statute,

---

23. Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); Bantam Books, Inc., v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Freedman v. State of Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

it, of course, is a purely subjective matter—what one man would consider a threat may not be a threat to another. Certainly there is no basis for a conclusion that the threat of criminal prosecution is materially increased merely because the prosecution may be brought in one of several districts.

Accordingly we cannot conclude that the "threat" of prosecution of any defendant is any greater since passage of the 1958 amendment than that "threat" may have been before enactment. It can only be hypothesized that the chances of successful prosecution at the trial level may be somewhat more favorable to the Government if it has a choice of venue. But in that connection it must be noted that we are dealing with a *uniform* and constitutionally sufficient standard of what constitutes obscenity in a particular case, and while the criteria are uniform, uniformity of result cannot be guaranteed. (Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)).

■■■ Prior to the enactment of the multi-venue provisions the Supreme Court upheld the constitutionality of the Federal Obscenity Statute in *Roth,* supra, (Albert v. California). In *Roth* the issue was specifically whether the Federal obscenity statute violated the First, Fifth, Ninth and Tenth Amendments. The Court held that obscenity is not within a constitutionally protected area. Accordingly the Federal statutes when applied "according to the proper standard for judging obscenity do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited." *Roth,* supra, 354 U.S. at 492, 77 S.Ct. at 1313).

In *Roth* and in subsequent decisions dealing with attempts to define and establish obscenity standards [24] the Su-

preme Court has recognized that inevitably, all criminal statutes have some deterrent effect, and criminal statutes regulating constitutionally unprotected expression are *no exception*. The " 'Constitution does not require impossible standards'; all that is required is that the [statutory] language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *.' " * * * " 'That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense * * *.' " *Roth,* supra, at 491–492, 77 S.Ct. at 1312–1313, quoting from United States v. Petrillo, 332 U.S. 1, 7–8, 67 S. Ct. 1538, 1542, 91 L.Ed. 1877. The *Roth* opinion further notes that:

> " * . * * [I]t is common experience that *different juries may reach different results under any criminal statute*. That is one of the consequences we accept under our jury system." (At 492 note 30, 77 S.Ct. at 1313).

It was the concern of the Supreme Court for protecting the fundamental freedoms of speech and press and the possibility of encroachment that led it to find that it was "vital that the standards for judging obscenity safeguard * * material which does not treat sex in a manner appealing to prurient interest." Roth, Id. at 488, 77 S.Ct. at 1311. Correspondingly the Court noted that "[I]mplicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance. This rejection for that reason is mirrored in the *universal judgment that obscenity should be restrained.* * * *." Id. at 484–485, 77 S.Ct. at 1309. (Emphasis added).

**24.** Mr. Chief Justice Warren described the problem of what constitutes obscenity as "increasingly muddled and difficult for the federal and state courts and legislators to understand since we first defined the reach of the First Amendment in this area in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)" Jacobs v. State of New York, 388 U.S. 431 at 434, 87 S.Ct. 2098, 2100, 18 L.Ed.2d 1294 (1967). (Dissenting opinion).

In light of the undisputed and unavoidable ancillary effect which any criminal statute has upon proscribed conduct or expression this Court agrees with the Government's characterization that the appropriate question is not whether 18 U.S.C. §§ 1461 and 1462, as amended, induce self-censorship but rather whether the 1958 venue amendment increased the existing pressures toward self-censorship to a constitutionally unacceptable degree.

▆ Considering the Supreme Court's ruling in *Roth* that the obscenity standards are constitutionally sufficient to protect a person and place him on notice that a crime is being committed; and recognizing that such standards are uniformly applied; and believing that if a publisher is going to feel restrained, it will be out of fear of *any* prosecution rather than fear of prosecution in other than his home district, this Court must conclude that the venue amendments are constitutional on their face.

Any increase in apprehension which may accrue on a purely subjective basis by reason of the injection of a multi-venue provision is at most ancillary and *de minimus*. Such apprehension is only a concomitant of any criminal law and is susceptible to being raised regardless of the existence of multiple venue provisions.

As one court, which has also sustained this same venue provision noted:

"One who chooses to carry on an enterprise which might indeed offend criminal statutes enforceable in places in which he proposes to carry on his enterprise, must take the hazards involved. United States v. Wurzbach, 280 U.S. 396, 399, 50 S.Ct. 167, 74 L.Ed. 508. It is not the duty of the courts in enforcing the law or of Congress in enacting statutes to advise in advance the likely reaction of juries in each community in which an individual chooses to carry on his activities." United States v. Frew, 187 F.Supp. 500, 507 (E.D.Mich., 1960); also quoted in United States v. West Coast News Company, D.C., 30 F.R.D. 13 at 21 (1962).

The plaintiffs rely heavily upon Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) to discredit the multiple venue provision. The gist of their argument is that when Congress enacted the 1958 venue amendments it did so with the specific intent of causing obscenity to be litigated in the communities where the impact of the alleged obscenity was felt—that is, according to the local community standard —but that *Jacobellis* creates a national standard so that legislation enacted with a view to applying a local standard is of necessity unconstitutional. But this conclusion is not warranted under the present state of the law.[25] The question of national versus community or other standards has not yet been determined,[26] and particularly as concerns venue the Supreme Court itself has noted that the 1958 amendments have no effect on determining the community standards to apply in obscenity cases. Manual Enterprises v. Day, 370 U.S. 478 at 488 (n. 10), 82 S.Ct. 1432, at 8 L.Ed.2d 639. Accordingly it would seem that the plaintiffs have placed undue reliance on the *Jacobellis* decision, and certainly they have not demonstrated the unconstitutional purposes of the 1958 amendments through their interpretation of that case. The Court accordingly rejects this contention.[27]

---

25. While the court has on occasion made reference to a national contemporary community standard as opposed to a local contemporary community standard, a majority of the court has never agreed with this proposition. See Manual Enterprises v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962); Jacobellis v. State of Ohio, supra.

26. See petition for certiorari filed 6/28/67 in Case No. 430, G. I. Distributors v. New York, 389 U.S. 905, 88 S.Ct. 218, 19 L.Ed.2d 219 where the question of contemporary community standards is specifically raised.

27. The argument advanced by plaintiffs is but another challenge to the vagueness in the existing manner of determining

It is not being necessary to this decision, this Court will not embroil itself in a discussion of the variable as opposed to the constant concept of obscenity as most recently enunciated in Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966). See also, Lockhart & McClure, Censorship of Obscenity: The Developing Constitutional Standards, 45 Minn.L.Rev. 5 (1960).

The motion of the defendants for summary judgment is granted. The plaintiffs' motion for summary judgment and the defendants' motion to dismiss are denied. It is so ordered.

when material falls outside of protected expression. This we have already considered and rejected as grounds for attack upon this statute.